ACCEPTED
13-14-00727-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/27/2015 4:29:57 PM
DORIAN RAMIREZ
CLERK

NO. 13-14-00727-CV

# In The Court of Appeals
# Thirteenth Judicial District of Texas
# Corpus Christi, Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
2/27/2015 4:29:57 PM
DORIAN E. RAMIREZ
Clerk

GLORIA GARCIA,

Appellant,

vs.

GENESIS CRUDE OIL, L.P.,

Appellee.

From the 229th Judicial District Court,
Duval County, Texas, The Honorable Martin J. Chiuminatto, Jr., Presiding Judge
Cause No. DC-12-200

---

## APPELLANT'S BRIEF

---

James R. Harris
Harris & Greenwell – Of Counsel
The Six Hundred Building
600 Leopard Street, Suite 924
Corpus Christi, Texas 78401
Tel:  (361) 929-5362
Fax:  (361) 462-4580
Email:  jharris@harris-greenwell.com

Andrew M. Greenwell
**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 2800-S
Corpus Christi, Texas 78401
Telephone:  (361) 883-1946
Facsimile:   (361) 882-2900
agreenwell@harris-greenwell.com

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of names of parties and counsel pursuant to TEX. R. APP. P. 38.1(a):

**APPELLANT: GLORIA GARCIA**

**Trial and Appellate Counsel**:

Andrew M. Greenwell
**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 2800-S
Corpus Christi, Texas 78401
Tel:   (361) 883-1946
Fax:   (361) 882-2900

James R. Harris
**HARRIS & GREENWELL – OF COUNSEL**
The Six Hundred Building
600 Leopard Street, Suite 924
Corpus Christi, Texas 78401
Tel:   (361) 929-5362
Fax:   (361) 462-4580

**APPELLEES: GENESIS CRUDE OIL, L.P.**

**Trial and Appellate Counsel**

James T. Kittrell
Everard A. Marseglia, Jr.
**LISKOW & LEWIS**
First City Tower
1001 Fannin Street, Suite 1800
Houston, TX 77002
Tel:   (713) 651-2900
Fax:   (713) 651-2908

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................................... i

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iv

STATEMENT OF THE CASE ................................................................................... ix

STATEMENT ON ORAL ARGUMENT ...................................................................... xii

ISSUES ON APPEAL .......................................................................................... xiii

STATEMENT OF FACTS .........................................................................................1

I. THE MINERAL OWNERSHIP ...............................................................................1

    A.   1994 - OIL & GAS LEASE WITH UVALDE ENERGY CORPORATION. ................1

    B.   1998 - CHANGE IN LESSOR AND PAYOR .......................................................2

    C.   THE UNDERLYING TEXAS NATURAL RESOURCES CODE LITIGATION.............4

    D.   PARTIAL PAYMENTS BY GENESIS .................................................................7

SUMMARY OF THE ARGUMENT ............................................................................12

ARGUMENT ......................................................................................................13

I.   THE TRIAL COURT ERRED IN FINDING THE CAUSE OF ACTION FOR NONPAYMENT OF OIL AND GAS PROCEEDS OR INTEREST UNDER SECTION 91.404 OF THE RESOURCES CODE WAS EXTINGUISHED BY LATE PAYMENT. ...........................13

II.  THE TRIAL COURT ERRED IN DETERMINING LEGISLATIVE INTENT AND INTERPRETATION OF SECTION 91.406 OF THE TEXAS NATURAL RESOURCES CODE. ................................................................................................................16

ii

III. THE TRIAL COURT ERRED IN FINDING SECTION 91.403 OF THE RESOURCES CODE PROVIDES THE *ONLY* MANDATORY PENALTY FOR LATE PAYMENTS. .................24

IV. THE TRIAL COURT ERRED IN FINDING "ACTUAL" MONETARY DAMAGES ARE NECESSARY TO RECOVER A MINIMUM AWARD AND RECEIVE A FAVORABLE FINAL JUDGMENT. .................24

    A. THE LEGISLATURE IS NOT PRESUMED TO DO A USELESS ACT .................27

    B. GENESIS CANNOT RE-WRITE THE STATUTE TO SAY "IF ACTUAL DAMAGES ARE GREATER THAN ZERO." .................28

    C. ONE SATISFACTION RULE DOES NOT APPLY .................30

V. THE TRIAL COURT ERRED IN FINDING THAT GARCIA WAS NOT ENTITLED PROCEED TO TRIAL. .................31

    A. THERE WAS A JUSTICIABLE CONTROVERSY .................31

    B. GARCIA WAS ENTITLED TO KEEP A BINDING DIVISION ORDER IN PLACE. 34

CONCLUSION & PRAYER .................35

CERTIFICATE OF COMPLIANCE .................39

CERTIFICATE OF SERVICE .................39

APPENDICES .................40

## TABLE OF AUTHORITIES

**U.S. Court of Appeals**

*In re CPDC, Inc.*,
  337 F.3d 436 (5th Cir. 2003) ..............................................................................18

*GE Capital Commercial, Inc. v. Worthington Nat. Bank,*
  754 F.3d 297 (5th Cir. 2014) (applying Texas law) ...........................................31

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391, 396 (5th Cir. 2003) ......................................................................29

*McNeil v. Time Ins. Co.*,
  205 F.3d 179 (5th Cir. 2000) ..............................................................................18

*Phillips Petroleum Co. v. Williams*,
  158 F.2d 723, 727 (5th Cir. 1946) ......................................................................35

*Tenneco Chems., Inc. v. William T. Burnett & Co.*,
  691 F.2d 658, 665 (4th Cir.1982) .......................................................................29

*In re Trautman,*
  496 F.3d 366 (5th Cir. 2007) ..............................................................................18

**Texas Supreme Court**

*American Surety Co. v. Axtell Co.,*
  120 Tex. 166, 36 S.W.2d 715, 718 (Tex.1931) ..................................................15

*Bradshaw v. Baylor University,*
  126 Tex. 99, 84 S.W.2d 703, 705 (Tex. 1935) ...................................................30

*Brown v. Owens,*
  674 S.W.2d 748, 19 Ed. Law Rep. 1222 (Tex. 1984) ........................................18

*In re Canales,*
  52 S.W.3d 698 (Tex. 2001)..................................................................................17

*City of Marshall v. City of Uncertain,*
  206 S.W.3d 97, 105 (Tex. 2006); .......................................................................26

*City of Mason v. West Tex. Utilities Co.,*
  150 Tex. 18, 237 S.W.2d 273 (1951) ..................................................................17

*City of Waco v. Kelley*,
  309 S.W.3d 536 (Tex. 2010) ..........................................................................17,33

*Crimmins v. Lowry*,
  691 S.W.2d 582, 40 U.C.C. Rep. Serv. 1779 (Tex. 1985) .................................18

*Crown Life Ins. Co. v. Casteel*,
  22 S.W.3d 378, 390 (Tex. 2000) .....................................................................30,31

*Dolan v. Walker,*
  121 Tex. 361, 49 S.W.2d 695 (1932) ..............................................................17,18

*Ezell v. Knapp & Elliott,*
    120 Tex. 503, 39 S.W.2d 829 (1931) ................................................................18
*Fresh Coat, Inc. v. K-2, Inc.,*
    318 S.W.3d 893 (Tex. 2010) ............................................................................18
*Gilmore v. Waples,*
    108 Tex. 167, 188 S.W. 1037 (Tex. 1916) ......................................................18
*Hernandez v. Ebrom,*
    289 S.W.3d 316 (Tex. 2009) ............................................................................17
*International Security Life Insurance Co. v. Finck,*
    496 S.W.2d 544, 546-547 (Tex. 1973) ............................................................11
*Koy v. Schneider,*
    110 Tex. 369, 218 S.W. 479 (1920) ................................................................19
*Long v. Knox,*
    155 Tex. 581, 291 S.W.2d 292, 295 (1956)......................................................29
*Mills County v. Lampasas County,*
    90 Tex. 603, 40 S.W. 403 (1897) ....................................................................18
*In re Nalle Plastics,*
    406 S.W.3d 168 (Tex. 2013) ............................................................................26
*Owens & Minor, Inc. v. Ansell Healthcare Products, Inc.,*
    251 S.W.3d 481 (Tex. 2008) ............................................................................17
*Patterson v. Planned Parenthood of Houston,*
    971 S.W.2d 439, 442 (Tex.1998) ....................................................................32
*Phillips v. Beaber,*
    995 S.W.2d 655, 658 (Tex.1999) ....................................................................19
*Pleasant Glade Assembly of God v. Schubert,*
    264 S.W.3d 1, 6 (Tex. 2008) ..........................................................................29
*Rocor Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,*
    77 S.W.3d 253 (Tex. 2002)..............................................................................17
*St. Luke's Episcopal Hosp. v. Agbor,*
    952 S.W.2d 503, 505 (Tex.1997) ....................................................................16
*State v. Delesdenier,*
    7 Tex. 76, 1851 WL 4041 (1851) ....................................................................18
*Seay v. Hall,*
    677 S.W.2d 19 (Tex. 1984)..............................................................................17
*State Highway Dept. v. Gorham,*
    139 Tex. 361, 162 S.W.2d 934 (Tex. 1942) ....................................................17
*Stewart Title Co. v. Sterling,*
    822 S.W.2d 1, 10 (Tex. 1991) ......................................................................9,30

*Texas Ass'n of Bus. v. Texas Air Control Bd.,*
852 S.W.2d 440, 444 (Tex.1993) ...............................................................32

*Tex. Lottery Comm'n v. First State Bank of DeQueen,*
325 S.W.3d 628, 637 (Tex. 2010) ..............................................................25

*Texas-Louisiana Power Co. v. City of Farmersville*,
67 S.W.2d 235 (1933)..........................................................................17,18

*Tx Municipal League Intergovernmental Risk Pool v. Tx Workers' Comp. Com'n*,
74 S.W.3d 377 (Tex. 2002).........................................................................17

*Waco Indep. Sch. Dist. v. Gibson,*
22 S.W.3d 849, 851 (Tex.2000) ................................................................32

**Texas Court of Civil Appeals**

*Aland v. Martin,*
271 S.W.3d 424, 430 (Tex.App.—Dallas 2008, no pet.) ...................................28

*Andrews v. Diamond, Rash, Leslie & Smith*,
959 S.W.2d 646, 650 (Tex. App.—El Paso 1997, writ denied) ........................29

*Baylor University Medical Center v. Borders*,
581 S.W.2d 731 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.)................17,18

*Capley v. Hudson,*
286 S.W. 531 (Tex. Civ. App.—Amarillo 1926, no writ)................................18

*Centurion Planning Corp. v. Seabrook Venture II,*
176 S.W.3d 498, 504 (Tex. App.—Houston [1st Dist.] 2004, no pet.).........18,25

*Denver-Albuquerque Motor Transport, Inc. v. State,*
584 S.W.2d 738 (Tex. Civ. App.—Amarillo 1979, no writ)..............................18

*Dunnagan v. Watson,*
204 S.W.3d 30, 43 (Tex.App.—Fort Worth 2006, pet. denied)........................26

*Frasier v. Yanes,*
9 S.W.3d 422, 427 (Tex.App.—Austin 1999, no pet.)....................................34

*Frass* v. *Darrouzett Independent School Dist.*,
277 S.W. 751 (Tex. Civ. App.—Amarillo 1925, writ dism'd w.o.j.) ................18

*GXG, Inc. v. Texacal Oil & Gas,*
977 S.W.2d 403, 140 O.G.R. 278 (Tex.App.—Corpus Christi 1998, pet.
denied)..................................................................................................11

*Gonzalez v. Gonzalez,*
672 S.W.2d 887 (Tex. App.—Corpus Christi 1984, no writ) ..........................17

*Green v. County Attorney of Anderson County,*
592 S.W.2d 69 (Tex. Civ. App.—Tyler 1979, no writ) ..................................18

*Holcombe v. Levy*,
301 S.W.2d 507 (Tex. Civ. App.—Galveston 1957, writ refused n.r.e.)...........19

*Houston Chronicle Pub. Co. v. City of Houston,*
     531 S.W.2d 177, 82 A.L.R.3d 1 (Tex. Civ. App.—Houston [14th Dist.] 1975),
     *writ refused n.r.e.*, 536 S.W.2d 559 (Tex. 1976).................................................18
*Jones v. Clem,*
     2012 WL 1069168, ___ S.W.3d ___, (Tex.App.—Eastland, 2012
     (unpublished opinion) ..............................................................................................4
*Koch Oil Co. vs. Wilber,*
     895 S.W.2d 854, 867 (Tex.App.—Beaumont 1995, writ denied).................10,20
*In re K.L.V.,*
     109 S.W.3d 61, 65 (Tex.App.—Fort Worth 2003, pet. denied).........................16
*Lawson v. Baker,*
     220 S.W. 260 (Tex. Civ. App.—Austin 1920, writ ref'd)..................................18
*Metroflight, Inc. v. Shaffer*,
     581 S.W.2d 704, 709 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e)..............30
*Metropolitan Transit Authority v. Plessner,*
     682 S.W.2d 650 (Tex. App.—Houston [1st Dist.]1984 no writ) ........................17
*Morton Salt Co. v. Wells*,
     35 S.W.2d 454 (Tex.Civ.App.—Dallas 1930), *aff'd,* 70 S.W2d 409 (Tex. 1934)
     ...............................................................................................................................19
*Peterson v. Calvert*,
     473 S.W.2d 314 (Tex. Civ. App.—Austin 1971, writ ref'd.)............................17
*Prize Energy Res., L.P. v. Cliff Hoskins, Inc*.,
     345 S.W.3d 537, 560 (Tex.App.—San Antonio 2011, no pet.) .........................35
*Railroad Commission of Texas v. Texas & N.O.R. Co.,*
     42 S.W.2d 1091 (Tex. Civ. App.—Austin 1931, writ ref'd);.............................18
*Railroad Com'n of Texas v. Olin Corp.,*
     690 S.W.2d 628 (Tex. App.—Austin 1985, writ ref'd n.r.e.) ............................17
*Richards v. Mena*,
     907 S.W.2d 566 (Tex. App.—Corpus Christi 1995, writ dism'd by agr.) .........17
*Sanchez v. Brandt,*
     567 S.W.2d 254 (Tex. Civ. App.—Corpus Christi 1978, writ refused n.r.e.)....18
*Sparks v. Kaufman County*,
     194 S.W. 605 (Tex. Civ. App.—Dallas 1917, writ ref'd) .................................18
*State v. Estate of Loomis*,
     553 S.W.2d 166 (Tex. Civ. App.—Tyler 1977, writ ref'd.)..............................17
*Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.,*
     167 S.W.3d 522, 530-31 (Tex. App.—Ft. Worth 2005, no pet.)........................28

*Texas Dep't of Pub. Safety v. Moore,*
    985 S.W.2d 149, 153 (Tex.App.―Austin 1998, no pet.)..............................31,32
*The Pea Picker, Inc. v. Reagan,*
    632 S.W.2d 674, 677 (Tex.App.―Tyler 1982, writ ref'd n.r.e.).......................34
*Thrush v. Lingo Lumber Co.*,
    262 S.W. 551 (Tex. Civ. App.―Dallas 1924, writ ref'd) ..................................17

## Texas Court of Criminal Appeals

*Ivey v. State,*
    277 S.W.3d 43 (Tex. Crim. App. 2009) ..........................................................18
*Kutzner v. State,*
    75 S.W.3d 427 (Tex. Crim. App. 2002) ...........................................................17
*Mahaffey v. State,*
    316 S.W.3d 633 (Tex. Crim. App. 2010) ..........................................................17
*Slack v. State*,
    61 Tex. Crim. 372, 136 S.W. 1073 (Tex. Crim. App. 1911)...............................18

## Statutes & Rules

TEX. CIV. PRAC. & REM. CODE SEC. 12.002(a) - 12.002(3)(b) ...........................27,28
TEX. CIV. PRAC. & REM.CODE ANN. § 37.002 .................................................13,32
TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 .................................................31,33
TEX. GOV'T CODE ANN. § 311.021(2) ...............................................................25
TEX. GOV'T CODE ANN. § 311.023 (West 2005) ..............................................19,25
Tex. Gov't Code Ann. § 312.005 .....................................................................17
TEXAS NATURAL RESOURCES CODE. ACTS 1983, 68TH LEG. P. 966, CH. 228, § 1 ........
........................................................................................................14,19,20
TEXAS NATURAL RESOURCES CODE § 91.401 .......................................................5
TEXAS NATURAL RESOURCES CODE § 91.402 ...........................................5,28,34,35
TEXAS NATURAL RESOURCES CODE § 91.403 ................. 6,7,9,12,20,22,24,26,36,37
TEXAS NATURAL RESOURCES CODE § 91.404 ........ 4,6,8,11,12,13,23,25,33,35,36,37
TEXAS NATURAL RESOURCES CODE § 91.406 .........................................................
...................................................... 6,7,8,11,12,13,14,15,16,22,23,25,26,27,36,37

## Other Authorities

TEX. JUR. STATUTES § 107...............................................................................18
Bill    Analysis    *available    at*    http://    www.legis.state.tx.us/BillLookup
    /BillNumber.aspx. "In 1983...................................................................14
Tex. H.B. 1775, 68th Leg., R.S. (1983).........................................................14,19,20
Tex. H.B. 2363,70th Leg., R.S. – Bill Analysis: Purpose; Synopsis...................14,21

ATTORNEY-GENERAL'S OFFICE AND GERALD C. MANN,
   *TEXAS ATTORNEY GENERAL OPINION: O-3811*, TEXT, 1941; DIGITAL IMAGES,
   (HTTP://TEXASHISTORY.UNT.EDU/ARK:/67531/METAPTH261050 .......................... 18
The Portal to Texas History, http://texashistory.unt.edu .......................................... 18

**STATEMENT OF THE CASE**

This case involves the statutory interpretation of Texas Natural Resources Code § 91.406, and the purpose and intent of the Legislature in adding a new law with additional penalties of a "Minimum Award" and mandatory reasonable attorney's fees to be awarded to the royalty owner, *if suit had to be filed* to collect oil and gas proceeds and interest. The new penalties imposed by the Legislature were to be an additional incentive to force the Payor to make timely payment of royalties, as the statutory interest penalty imposed in 1983 on late payments established under Texas Natural Resources Code § 91.403 was not getting the job done. The parties dispute whether the cause of action established under Texas Natural Resources Code § 91.404 to collect unpaid proceeds and interest can be extinguished — and the additional penalties to be imposed under Section 91.406 nullified and voided, if late payment of oil and gas proceeds and interest is finally tendered – albeit *after suit had to be filed*.

On motion for summary judgment filed by the Defendant Genesis Crude Oil, L.P.,[1] the trial court found as a matter of law that the additional late payment penalties enacted under Section 91.406 were not mandatory and were extinguished

---

[1] CR. 158

x

if late payment was tendered at any point prior to trial.[2]  As a result, the trial court found the royalty owner was not entitled to collect either the Minimum Award or reasonable attorney's fees for being forced to bring a lawsuit.[3]  In so doing, the trial court rejected both the law's requirements and the legislative intent to add additional mandatory penalties over and above statutory interest, *if a lawsuit had to be filed* because of non-payment of oil and gas proceeds or interest on late payments.[4]

By its ruling, the trial court also rejected the correct standard in making a determination that since late payments and interest had been finally paid, without further monetary damages Gloria Garcia was not entitled to a favorable judgment, the Minimum Award of $200 and recovery of reasonable attorney's fees, or a declaration of the rights of the parties in an ongoing and continuing relationship.[5]

---

[2] CR. 296.  For the Court's convenience, a copy of the Order granting summary judgment is attached as Appendix A.

[3] CR. 296.

[4] CR. 209, 238.

[5] CR. 214.

## STATEMENT ON ORAL ARGUMENT

The Appellant believes that oral argument would be valuable and is warranted in this case. This case involves important issues involving the rights of royalty owners, statutory interpretation, and legislative history, and the Court would be aided by oral argument. Moreover, any ruling in this case, which would involve issues of first impression, would have significant effect on the relationship between royalty interest owners and operators, especially on the rights of royalty interest owners to their royalties and the remedies they have in the event operators fail to pay those timely. For these reasons, the Appellant believes that oral argument should be granted.

## ISSUES ON APPEAL

### ISSUE NO. 1

Whether the trial court erred in determining as a matter of law, that a cause of action under Texas Natural Resources Code § 91.404(a)-(b) can be extinguished, and the additional penalties to be imposed under Texas Natural Resources Code § 91.406 nullified and voided *even if a suit is filed*, as long as the Payor tendered late payment of oil and gas proceeds and interest before a trial commences.

### ISSUE NO. 2

Whether the trial court erred in determining as a matter of law, that statutory interest imposed under Texas Natural Resources Code § 91.403 provides the only mandatory penalty for late payments, even if the Payee *has been forced to file suit* to collect unpaid oil and gas proceeds and interest.

### ISSUE NO. 3

Whether the trial court erred in determining as a matter of law, that in order to be entitled to recover the statutory Minimum Award of $200.00 and reasonable attorney's fees under Texas Natural Resources Code § 91.406 *if suit is filed*, the Payee must still recover "actual" monetary damages in order to be entitled to favorable final judgment.

### ISSUE NO. 4

Whether the trial court erred in determining as a matter of law that the statutory language of Texas Natural Resources Code § 91.406 was plain and unambiguous, which precluded an inquiry into the legislative intent of enacting additional mandatory penalties *if suit had to be filed*, as an incentive to force the Payor to timely pay proceeds from the sale of oil and gas.

# ISSUE NO. 5

Whether the trial court erred in denying Garcia's right to proceed to trial to establish the essential elements of her claim:

    a.     After notice was given, Genesis breached its duty to timely pay proceeds from the sale of oil and gas to Gloria Garcia, pursuant to Texas Natural Resources Code § 91.402(a)(1);

    b.     Genesis was not excused from making a timely payment of oil and gas proceeds, as there was no legitimate title dispute;

    c.     Reasonable attorney's fees incurred by Gloria Garcia were established as a matter of law;

        and

    d.     A declaration of rights under the Texas Natural Resources Code, that Genesis "*is or was a 'payor' vis-à-vis Ms. Garcia*" and "*has or had*" a duty to keep in place a binding division order in connection with the subject lease under § 91.402(c)(1).

## STATEMENT OF FACTS

**I.   THE MINERAL OWNERSHIP**

**A.  1994 - OIL & GAS LEASE WITH UVALDE ENERGY CORPORATION.**

On August 3, 1994, Gloria Garcia and her father, Willie De La Fuente (now deceased) as Lessors, executed and delivered an Oil, Gas and Liquid Hydrocarbons Lease to Uvalde Energy Corporation, Lessee, for the purpose of drilling and producing oil, gas, and all other liquid and hydrocarbons.[6]  The lease was for a term of two (2) years from the date of its execution and as long thereafter as oil or gas was produced from the land by the Lessee in paying quantities, and was filed for record.[7]

Gloria Garcia's ownership interest in the 164.16 acre ranch was memorialized by Gift Deed from her father, Willie De La Fuente, filed for record in Duval County, Texas on November 7, 1994.[8] This conveyance to Mrs. Garcia of the entire fee simple surface and an undivided one-half of the mineral estate was subsequently corrected to reflect the reservation of a life estate in the right to receive rents and royalties by Willie De La Fuente until his death, which

---

[6] CR. 30-40.
[7] *Id..*
[8] Supp.CR. 11-12, 61-62.

instrument was filed for record on December 29, 1994.[9] A final Correction Deed was executed by Willie De La Fuente to reflect gifts to Mrs. Garcia of mineral interests in *additional* property also located in Duval County, still subject to the life estate being reserved by Willie De La Fuente, which was dated March 5, 1995, but filed for record on October 19, 1995.[10]

### B. 1998 - CHANGE IN LESSOR AND PAYOR.

In 1998, LTD Explorations, Inc. ("LTD") took an assignment of the Willie De La Fuente lease from Uvalde Energy Corporation, and assumed the contractual lease obligations as the new owner/operator.[11] LTD then contracted with Genesis Crude Oil, LP ("Genesis") to be the first purchaser of the oil produced from the subject lease.[12] As a result, on August 14, 1998, Genesis acquired an interest in the oil production and lease and assumed the obligations of a Payor under the Texas Natural Resources Code, issuing two Division Orders in favor of Willie De La Fuente under Lease No. 54546000, both made effective retroactively to July 1, 1998.[13]

---

[9] Supp.CR. 12, 64-65.
[10] Supp.CR. 12, 67-68.
[11] CR. 67-68.
[12] *Id.*
[13] Supp.CR. 12, 103-104.

2

Willie De La Fuente passed away on December 12, 2008.[14]  On April 26, 2011, Mrs. Garcia wrote a letter to LTD Exploration (the lessor and operator) and provided copies of the Death Certificate and Gift Deed to establish that her royalty ownership had fully vested.[15] Receiving no response, on July 12, 2011, Mrs. Garcia's attorney, Mark R. Paisley, wrote directly to Genesis concerning Mr. De La Fuente's death back in 2008, which triggered their duty to issue Mrs. Garcia new Division Orders in place of Willie De La Fuente, and begin payment of oil and gas proceeds under the lease.[16] Although Paisley wrote and later called Genesis relating to royalty payments, Genesis never responded.[17]  Mrs. Garcia finally hired attorney James Harris, who again gave written notice to Genesis on January 24, 2013, of their continued failure to pay royalties and accrued interest to which she was entitled, and provided Genesis with another copy of the 2008 Death Certificate of Mr. De La Fuente.[18]

Genesis failed to pay the oil and gas proceeds due within 30 days after receipt of the required notice and demand for payment of past due royalties in January of

---

[14] Supp.CR. 12, 70.
[15] Supp.CR. 12, 70, 72-77.
[16] Supp.CR. 12, 79.
[17] Supp.CR. 12, 106.
[18] Supp.CR. 12, 83-99.

2013,[19] and Genesis had no reasonable cause to dispute Mrs. Garcia's entitlement to payment, as it was on constructive and actual notice of her right to be paid royalties upon proof of death of her father, and Mrs. Garcia's title was a matter of public record.[20]  Her recorded title in 1994 long-preceded the transfer of lease to LTD in 1998, and Genesis Crude Oil, L.P. did not begin purchasing production from the lease until July 1, 1998.[21]  Genesis willfully refused to respond to Mr. Harris' attempts to collect the unpaid royalties in Mrs. Garcia's behalf.

## C. THE UNDERLYING TEXAS NATURAL RESOURCES CODE LITIGATION.

Since receiving notice in 2011, both Genesis and LTD disputed liability for tendering timely royalty payments to Mrs. Garcia from the sale of oil and gas, and refused to issue division orders.  As a result, six months after sending the January 24, 2013 demand letter to Genesis, Mrs. Garcia amended an environmental property damage lawsuit already pending against the lease owner/operator (LTD) on July 19, 2013, to include both contractual and statutory claims under Texas Natural Resources Code for non-payment of royalties and interest accruing since

---

[19] CR. 187, Supp.CR. 12, 83; TEX. NATURAL RESOURCES CODE § 91.404(a)-(b).  For the Court's convenience, a copy of TEX. NATURAL RESOURCES CODE § 91.401-91.406 is attached to this Appellant's Brief as Appendix B.
[20] CR. 14-16, *Jones v. Clem,* 2012 WL 1069168, ___ S.W.3d ___, (Tex.App.—Eastland, 2012 (unpublished opinion).
[21] Supp.CR. 12, 103-104.

4

December 2010.[22]  Mrs. Garcia also sought declaratory relief from the Court to determine the identity of the statutory "payor" and obtain the division orders required to be issued under Texas Natural Resources Code § 91.402(c)(1), as a *prerequisite* to receiving payments.[23]  At the time of filing the July 19, 2013 petition, royalty payments due Mrs. Garcia had been suspended since December 2010, and both the well operator (LTD) and Genesis (the purchaser of oil production) denied liability for payment of royalties or accrued interest.[24]

As a result of the July 2013 pleading amendment, the trial date was delayed from November 12, 2013 to July 28, 2014.  Mrs. Garcia issued a subpoena for records from Genesis on September 18, 2013, seeking information regarding the amount of oil and gas being produced and purchased from the lease, and to determine the relationship between Genesis and the Lessee/Operator pertaining to the responsibility to issue division orders and pay proceeds to royalty owners.[25] On January 23, 2014, LTD joined Genesis in the pending lawsuit and Mrs. Garcia became aware that LTD had entered into an agreement with Genesis, whereby the

---

[22] CR. 21-40.
[23] *Id.*
[24] CR. 21-40, and 80-81, 101.
[25] TEXAS NATURAL RESOURCES CODE § 91.401(2) [""Payor" means the party who undertakes to distribute oil and gas proceeds to the payee, *whether as the purchaser* of the production of oil or gas generating such proceeds *or as operator of the well* from which such production was obtained *or as lessee* under the lease on which royalty is due."]. *See,* Appendix B.

5

purchaser (Genesis) was to be responsible for payment of the proceeds from the sale of oil or gas to the royalty owner. [26] Mrs. Garcia also learned at that time that LTD had made demand upon Genesis to perform its statutory obligations to issue a division order and pay over the royalty proceeds due to Mrs. Garcia, which LTD alleged Genesis had collected and was holding in suspense.[27] LTD's efforts to obtain cooperation from Genesis to make full payment of Garcia's royalties and accrued interest were unsuccessful.[28]

In April 2014, Genesis requested a continuance and the July 28, 2014 trial date was postponed again to November 17, 2014.[29]  On June 4, 2014, Mrs. Garcia filed her third amended petition joining Genesis as a direct defendant, seeking a declaration of her statutory rights and all damages to which she was entitled under the statute, including accrued interest, and the reasonable attorney's fees mandated under Texas Natural Resources Code § 91.406.[30] Mrs. Garcia asserted that as a result of *having to file suit under Section 91.404*, she was not only entitled to statutory interest on late payments due under § 91.403(a), but also the statutory Minimum Award of monetary damages and attorney's fees imposed under §

---

[26] CR. 43 at ¶ 3.2.
[27] *Id.*
[28] CR. 41-48.
[29] CR. 49.
[30] CR. 51-60, at 57. *See,* Appendix B.

6

91.406(1)-(2) of the Texas Natural Resources Code.[31]  Mrs. Garcia filed her Fourth Amended Original Petition against Genesis on September 22, 2014, after the contractual and environmental claims against LTD were severed from the lawsuit.[32]

## D.  PARTIAL PAYMENTS BY GENESIS

After Mrs. Garcia was forced to file suit on July 19, 2013 for "Nonpayment of Oil and Gas Proceeds or Interest" under the Texas Natural Resources Code and subpoenaed records from Genesis, two division orders were finally prepared and submitted by Genesis to Mrs. Garcia to be effective retroactively to December 1, 2010 and January 1, 2011 (respectively) and Genesis made a partial tender of accrued royalties on November 1, 2013.[33]  However, Genesis refused to pay Mrs. Garcia the statutory accrued interest due under Section 91.403(a) of the Texas Natural Resources Code.  As a result, Genesis was joined as a party to the lawsuit on January 23, 2014,[34] and named a direct defendant on June 5, 2014.[35]  Genesis continued to deny liability, asserting (among other defenses) that Mrs. Garcia had

---

[31] *Id. See,* Appendix B.
[32] CR. 66-85.
[33] CR. 174-175, 180-182.
[34] CR. 41-48.
[35] CR. 51-60.

7

no cause of action, no right to recover statutory interest, and Genesis had fulfilled all obligations under the Texas Natural Resources Code.[36]

Seventeen (17) months had elapsed since Genesis received the January 24, 2013 statutory notice from Mrs. Garcia regarding its failure to make timely payments of oil and gas proceeds and interest;[37] and eleven (11) months had elapsed since the Section 91.404 Texas Natural Resources Code lawsuit was filed, before Genesis made a *conditional* tender of statutory accrued interest on June 25, 2014, asserting "*this tender does not amount to a waiver or acknowledgement that Genesis **is or was** a 'payor' vis-à-vis Ms. Garcia under the Texas Natural Resources Code at any time, or that Genesis **has or had any liability to Ms. Garcia** for the payment of royalties in connection with this property.*"[38]

Genesis then moved for partial summary judgment under the framework of the Section 91.404 Resources Code cause of action, asserting Mrs. Garcia was not entitled to collect statutory attorney's fees or further relief under Section 91.406, despite having been forced to file suit to collect unpaid royalties and interest, because the attorney's fees being sought against Genesis were not reasonable and

---

[36] CR. 61-65.
[37] TEXAS NATURAL RESOURCES CODE § 91.404(a)-(c). *See,* Appendix B.
[38] CR. 187-191.

necessary.[39] Genesis argued that no claim for Garcia's attorney's fees could be attributable to her efforts to recover royalties and interest *from Genesis*.[40] Genesis further argued that since the total accrued interest (calculated on the tens of thousands of dollars withheld from Mrs. Garcia in unpaid royalties from December 2010 to November 2013) was ***only* $585.47,**[41] that "*any attorney fee award against Genesis must reflect that reality.*"

In response, Mrs. Garcia established as a matter of law that there was never a legitimate title dispute and Genesis had no *reasonable excuse* to withhold payments or refuse to issue a division order, because her title was a matter of public record in 1994, long prior to the time Genesis acquired its interest in the Willie De La Fuente lease in 1998.[42] There had been no *change in ownership* when Genesis acquired the right to purchase lease production. Mrs. Garcia also established that the attorney's fees being sought were both reasonable, necessary, and incurred *against the defendant* sought to be charged with said fees.[43] The attorney's fee claim against Genesis related to far more than *three weeks of*

---

[39] CR. 94-102, at 98 ¶ B ["...plaintiff is required to show that *the fees were incurred while suing the defendant sought to be charged with the fees* on a claim which allows recovery of such fees.*" (citing) *Stewart Title Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex. 1991)].
[40] CR. 101.
[41] Calculation based on the statutory penalty formula established by Sec. 91.403(a). *See,* Appendix B.
[42] Supp. CR. 14-16; and CR. 155.
[43] *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); CR. 155.

9

*litigation* against Genesis, and included 132.6 hours of attorney time and 139.9 hours of paralegal time to investigate why Genesis refused to accept Mrs. Garcia's reasonable notice of the death of Mr. De La Fuente in 2011; sending statutory demand under the Resources Code in January of 2013 for non-payment of oil and gas proceeds; conducting discovery; preparing and responding to pleadings; attending hearings; consulting with the client, opposing counsel and expert witnesses; and demonstrated the hourly rates of $300 and $85 respectively were both fair and reasonable for the work involved.[44] Mrs. Garcia also demonstrated that the claim was over two years old and suit had been filed to obtain release of suspended royalties totaling ***$57,913.42*** in the aggregate as well as accrued interest, and the total attorney's fees being sought from Genesis totaled $51,786.50 through July 23, 2014.[45] Because Mrs. Garcia had been required to employ legal counsel to retrieve the suspended funds, and those fees were itemized and segregated in a realistic fashion to place responsibility where it belonged, Mrs. Garcia was entitled to recover reasonable attorney's fees for those services.[46]

Genesis continued to argue that the framework for an award of statutory attorney's fees must be limited to fees incurred between June 4, 2014 and the date

---

[44] Supp. CR. 16-17 @ ¶ IX; Supp. CR. 27-31; Supp. CR. 32-46.
[45] Supp. CR. 17; Supp. CR. 27-31 and 32-46.
[46] Supp. CR. 16-17; *Koch Oil Co. vs. Wilber,* 895 S.W.2d 854, 867 (Tex.App.—Beaumont 1995, writ denied); CR. 155.

statutory interest was tendered on June 25, 2014.[47]  In response, Mrs. Garcia demonstrated that the statutory language awarding reasonable attorney's fees under Sec. 91.406 of the Resources Code did not limit an award to fees *incurred after suit is filed*.[48]  In addition, as long as the fees sought to be recovered were proximately and necessarily caused by the act complained of,[49] rendered *in connection with the claims for which recovery is authorized,*[50] and segregated from services rendered in connection with other claims, then the fees were reasonable and necessary.[51]

The trial court correctly ruled that an award of reasonable attorney's fees under Resources Code Section 91.406 was not limited to those fees incurred *after suit was filed,* but erred in granting final summary judgment that the entire cause of action under Section 91.404 was extinguished upon payment of proceeds and accrued interest, and, as a result, the additional penalties to be awarded *if suit must be filed* were nullified or extinguished and further relief unavailable to Mrs. Garcia under the Resources Code.

---

[47] CR. 147.
[48] CR. 150-152; CR. 155. *See,* Appendix B.
[49] CR. 152-153; citing *GXG, Inc. v. Texacal Oil & Gas*, 977 S.W.2d 403, 140 O.G.R. 278 (Tex.App.—Corpus Christi 1998, pet. denied).
[50] *International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544, 546-547 (Tex. 1973).
[51] *Id.*; CR. 155.

Genesis moved for final summary judgment on the theory that once late payment had been made for oil and gas proceeds, and once even later payment had been made for accrued interest, the cause of action established under Section 91.404 of the Texas Natural Resources Code was completely extinguished. Thus, Genesis argued that allowing Mrs. Garcia to recover her attorney's fees and a Minimum Award of $200 established under Section 91.406, would be *"redundant to the remedy of statutory interest provided in Section 91.403 of the Resources Code"* an[d] *"creates a double penalty where it does not exist."*[52] Genesis argued that *"Section 91.403 provides the* **mandatory remedy** *for any late payments, statutory interest."*[53] As a result, Genesis argued the court should not look to the statute's legislature history, because the plain meaning of Section 91.406 was unambiguous[54] and required a judgment for proceeds or interest as "actual damages" at the time of trial, in order for the judgment to be "favorable" to the plaintiff.[55]

Genesis' Amended Motion for "Final" Summary Judgment stated the only three issues in the case were (1) whether the Sec. 91.404 cause of action for

---

[52] CR. 284. *See,* Appendix B.
[53] CR. 286 @ ¶ 2.
[54] CR. 286 @ ¶ 1.
[55] CR. 285.

"Nonpayment of Oil and Gas Proceeds or Interest" remained following payment; (2) if no Section 91.404 cause of action still exists, whether an independent cause of action existed allowing recovery of attorney's fees; and (3) whether a party could replead the Sec. 91.404 cause of action for non-payment as a Chapter 37 declaratory judgment action and recover attorney's fees.

The trial court erred by granting a final "take nothing" judgment that the additional remedies to be afforded under Texas Natural Resources Code Section 91.406, *if suit had to be filed* were not available, because the Section 91.404(c) cause of action established under the Texas Natural Resources Code had been extinguished following Genesis' late payment of oil and gas proceeds and statutory accrued interest.[56]

## ARGUMENT

### I. THE TRIAL COURT ERRED IN FINDING THE CAUSE OF ACTION FOR NONPAYMENT OF OIL AND GAS PROCEEDS OR INTEREST UNDER SECTION 91.404 OF THE RESOURCES CODE WAS EXTINGUISHED BY LATE PAYMENT.

Genesis contends that Section 91.404 created only one cause of action, and the affirmative defense of payment (albeit late) for proceeds on November 1, 2013 and late payment of statutory interest on June 25, 2014, extinguished the Resources

---

[56] *See,* Appendix A.

13

Code cause of action for Nonpayment of Oil and Gas Proceeds Or Interest.[57] Prior to the 1987 enactment of Section 91.406, Genesis' interpretation of the law would have been correct. However, following the addition of Section 91.406, statutory interest for late payments was no longer the only mandatory penalty to be imposed, *if suit was filed to collect proceeds and interest.*

The sole purpose and legislative intent for adding Section 91.406 to the Texas Natural Resources Code was to provide "*that if a suit is filed to collect proceeds and interest from the sale of oil and gas proceeds, the court <u>shall include reasonable attorney's fees and a minimum award of $200</u>*" as an additional *incentive* for the Payor to *timely* make payments.[58] Despite the 68th Texas Legislature enacting strict time deadlines for payment in 1983, the 70th Legislature recognized that it was still very difficult for an individual with a claim for unpaid royalty to obtain relief in a court of law under the Resources Code.[59] Thus, recovery of a *minimum award* and *mandatory attorney's fees* were added as additional remedies to persons forced to file suit under the Sec. 91.404 cause of action established in 1983 by the 68th Legislature, for nonpayment of proceeds and

---

[57] CR. 162-163. *See,* Appendix B.
[58] CR. 238 and Appendix D (Tex. H.B. 2363,70th Leg., R.S. – Bill Analysis: Purpose; Synopsis).
[59] *See,* CR. 238 and Appendix D (Tex. H.B. 2363,70th Leg., R.S. – Bill Analysis: Background).

interest.[60]

In *American Surety Co. v. Axtell Co.,* the Texas Supreme Court established the steps in interpreting a statute:

> To arrive at the intention of the Legislature ... it is the duty ... to look primarily to the act itself as an entirety; and to understand the legal effect of the amendment enacted by the Legislature, it must be considered in connection with the original act, and that which has been done thereunder. A particular section of an act of the Legislature, when enacted, must be construed in view of the existence of the original statute as it stands after the amendment is introduced; it and all sections of the old law must be regarded as a harmonious whole, as connected with and naturally acting upon each other.... It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment.[61]

This Court is thus bound to conclude that, in amending the statute to <u>add</u> Section 91.406, the Legislature intended to change existing law and implement additional mandatory penalties over and above the statutory interest penalty on late payments —if the incentives were ignored and the royalty owner was forced to file suit. As a result, once suit has been filed to collect proceeds or interest under the Resources Code, then even a late tender of proceeds or interest cannot completely extinguish the Resources Code cause of action. A plaintiff is entitled to proceed to trial and prove the essential elements of this cause of action (i.e., breach by non-payment;

---

[60] CR. 238 and Appendix D (Background).
[61] *American Surety Co. v. Axtell Co.,* 120 Tex. 166, 36 S.W.2d 715, 718 (Tex.1931) (internal citations and quotations omitted).

written notice of failure to pay timely; and no reasonable excuse for non-payment).

If all elements are proven, the plaintiff is entitled to a favorable judgment with a

Minimum Award of $200 and reasonable attorney's fees for the collection process.

## II. THE TRIAL COURT ERRED IN DETERMINING LEGISLATIVE INTENT AND INTERPRETATION OF SECTION 91.406 OF THE TEXAS NATURAL RESOURCES CODE.

Section 91.406 of the Texas Natural Resources Code states:

"Sec. 91.406. **ATTORNEY'S FEES AND MINIMUM AWARD**. *If a suit is filed to collect proceeds and interest* under this subchapter, the court *shall* include in any final judgment in favor of the plaintiff an award of:

(1) Reasonable attorney's fees; and

(2) If the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

(Emphasis added)

Genesis argued and the trial court apparently found that Section 91.406 was

unambiguous, but ignored legislative intent and failed to construe the amended

statute as a whole. When language in a statute is unambiguous, we will seek the

intent of the legislature as found in the plain and common meaning of the words

and terms used.[62]

In interpreting a statute, a court must diligently attempt to ascertain

---

[62] *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997); *In re K.L.V.,* 109 S.W.3d 61, 65 (Tex.App.—Fort Worth 2003, pet. denied).

legislative intent and must consider at all times the old law, the evil, and the remedy.[63]   It is the duty of the courts to give full recognition to the legislative intent;[64] therefore, when construing a statute, the primary goal is to ascertain and give effect to the legislature's intent in enacting it[65] and not to defeat,[66] nullify,[67] or thwart it.[68]   Once the intent has been ascertained, statutes must be interpreted so as to give effect to the legislative intent[69] as to the whole and each material part of the law[70] *even though this may involve a departure from the strict letter of the law as*

[63] TEX. GOV'T CODE ANN. § 312.005.

[64] *Kutzner v. State,* 75 S.W.3d 427 (Tex. Crim. App. 2002); *Texas Municipal League Intergovernmental Risk Pool v. Texas Workers' Compensation Com'n*, 74 S.W.3d 377 (Tex. 2002); *Seay v. Hall*, 677 S.W.2d 19 (Tex. 1984); *Railroad Com'n of Texas v. Olin Corp.,* 690 S.W.2d 628 (Tex. App.—Austin 1985, writ ref'd n.r.e.); *Metropolitan Transit Authority v. Plessner*, 682 S.W.2d 650 (Tex. App.—Houston [1st Dist.]1984 no writ); *Gonzalez v. Gonzalez,* 672 S.W.2d 887 (Tex. App.—Corpus Christi 1984, no writ).

[65] *Mahaffey v. State,* 316 S.W.3d 633 (Tex. Crim. App. 2010); *City of Waco v. Kelley*, 309 S.W.3d 536 (Tex. 2010); *Hernandez v. Ebrom,* 289 S.W.3d 316 (Tex. 2009); *Owens & Minor, Inc. v. Ansell Healthcare Products, Inc.,* 251 S.W.3d 481 (Tex. 2008); *Rocor Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253 (Tex. 2002); *In re Canales,* 52 S.W.3d 698 (Tex. 2001).

[66] *Dolan v. Walker,* 121 Tex. 361, 49 S.W.2d 695 (1932); *Baylor University Medical Center v. Borders*, 581 S.W.2d 731 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.); *State v. Estate of Loomis*, 553 S.W.2d 166 (Tex. Civ. App.—Tyler 1977, writ ref'd.).

[67] *Baylor University Medical Center,* 581 S.W.2d 731 (Tex. Civ. App.—Dallas 1979); *Estate of Loomis*, 553 S.W.2d 166 (Tex. Civ. App. 1977); *Peterson v. Calvert*, 473 S.W.2d 314 (Tex. Civ. App.—Austin 1971, writ ref'd.).

[68] *City of Mason v. West Tex. Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273 (1951); *Baylor University Medical Center*, 581 S.W.2d 731; *Estate of Loomis*, 553 S.W.2d 166.

[69] *Richards v. Mena*, 907 S.W.2d 566 (Tex. App.—Corpus Christi 1995, writ dism'd by agr.).

[70] *Texas-Louisiana Power Co. v. City of Farmersville*, 67 S.W.2d 235 (Tex. Comm'n App. 1933, writ dismissed); *State Highway Dept. v. Gorham*, 139 Tex. 361, 162 S.W.2d 934 (Tex. 1942); *Thrush v. Lingo Lumber Co.*, 262 S.W. 551 (Tex. Civ. App.—Dallas 1924, writ ref'd).

*written* by the legislature.[71]  Under Texas law, giving effect to legislature's intent is the fundamental canon[72] and the cardinal,[73] primary,[74] and paramount rule of construction,[75] which should always be closely observed and to which all other rules must yield.[76]  *The intention of the legislature in enacting a law is the law itself,*[77] *the essence of the law,*[78] *and the spirit that gives life to the enactment.*[79]

---

[71] TEX. JUR. STATUTES § 107; see also, Attorney-General's Office and Gerald C. Mann, *Texas Attorney General Opinion: O-3811*, Text, 1941; digital images, (http://texashistory.unt.edu/ark:/67531/metapth261050; The Portal to Texas History, http://texashistory.unt.edu.

[72] *Brown v. Owens,* 674 S.W.2d 748, 19 Ed. Law Rep. 1222 (Tex. 1984); *Green v. County Attorney of Anderson County,* 592 S.W.2d 69 (Tex. Civ. App.—Tyler 1979, no writ); *Sanchez v. Brandt,* 567 S.W.2d 254 (Tex. Civ. App.—Corpus Christi 1978, writ refused n.r.e.); *Capley v. Hudson,* 286 S.W. 531 (Tex. Civ. App.—Amarillo 1926, no writ).

[73] *In re Trautman,* 496 F.3d 366 (5th Cir. 2007); *In re CPDC, Inc.*, 337 F.3d 436 (5th Cir. 2003); *McNeil v. Time Ins. Co.*, 205 F.3d 179 (5th Cir. 2000); *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893 (Tex. 2010); *Ivey v. State,* 277 S.W.3d 43 (Tex. Crim. App. 2009).

[74] *Texas-Louisiana Power Co. v. City of Farmersville,* 67 S.W.2d 235 (Tex. Comm'n App. 1933, writ dismissed); *Ezell v. Knapp & Elliott,* 120 Tex. 503, 39 S.W.2d 829 (Comm'n App. 1931); *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037 (Tex. 1916).

[75] *Dolan v. Walker*, 121 Tex. 361, 49 S.W.2d 695 (1932); *Railroad Commission of Texas v. Texas & N.O.R. Co.,* 42 S.W.2d 1091 (Tex. Civ. App.—Austin 1931, writ ref'd); *Lawson v. Baker,* 220 S.W. 260 (Tex. Civ. App.—Austin 1920, writ ref'd); *Sparks v. Kaufman County*, 194 S.W. 605 (Tex. Civ. App.—Dallas 1917, writ ref'd).

[76] *Slack v. State*, 61 Tex. Crim. 372, 136 S.W. 1073 (Tex. Crim. App. 1911); *Mills County v. Lampasas County,* 90 Tex. 603, 40 S.W. 403 (1897); *State v. Delesdenier,* 7 Tex. 76, 1851 WL 4041 (1851); *Frass* v. *Darrouzett Independent School Dist.*, 277 S.W. 751 (Tex. Civ. App.—Amarillo 1925, writ dism'd w.o.j.).

[77] *Crimmins v. Lowry*, 691 S.W.2d 582, 40 U.C.C. Rep. Serv. 1779 (Tex. 1985); *Baylor University Medical Center,* 581 S.W.2d 731.

[78] *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037 (1916); *Denver-Albuquerque Motor Transport, Inc. v. State,* 584 S.W.2d 738 (Tex. Civ. App.—Amarillo 1979, no writ); *Houston Chronicle Pub. Co. v. City of Houston,* 531 S.W.2d 177, 82 A.L.R.3d 1 (Tex. Civ. App.—Houston [14th Dist.] 1975), *writ refused n.r.e.*, 536 S.W.2d 559 (Tex. 1976).

The Court's objective in construing a statute should be to determine and give effect to the Legislature's intent.[80] To determine intent, the Court must first look to the plain language of the statute.[81] The statute's terms should be viewed in the context of the surrounding words and provisions.[82] Regardless of whether or not the statute is ambiguous, the Court may additionally *look to the object sought to be obtained by the enactment* of the statute; the circumstances under which the statute was enacted; the legislative history of the statute; common law provisions, former statutory provisions, or laws on the same or similar subjects; *the consequences of interpreting the statute in a particular way*; the administrative construction of the statute; *and the title*, preamble, and emergency provision.[83]

In 1983, when H.B. 1775 was initially introduced to add a requirement for timely payment of proceeds from the sale of oil and gas, there were no deadlines for royalty payments.[84]

---

[79] *Koy v. Schneider*, 110 Tex. 369, 218 S.W. 479 (1920); *Holcombe v. Levy*, 301 S.W.2d 507 (Tex. Civ. App.—Galveston 1957, writ refused n.r.e.); *Morton Salt Co. v. Wells*, 35 S.W.2d 454 (Tex. Civ. App.—Dallas 1930, writ granted), and *aff'd*, 123 Tex. 151, 70 S.W.2d 409 (1934).

[80] *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999)**.**

[81] *Id.*

[82] *Id.*

[83] TEX. GOV'T CODE ANN. § 311.023 (West 2005) (emphasis added).

[84] *See,* Appendix C. Tex. H.B. 1775, 68th Leg., R.S. (1983); Bill Analysis *available at* http://www.legis.state.tx.us/BillLookup /BillNumber.aspx. "In 1983, our Texas Legislature enacted Sections 91.401 through 91.405 of the Texas Natural Resources Code. Acts 1983, 68th Leg. p. 966, ch. 228, § 1. Four bills concerning this topic were introduced: HB 1775, SB 146, and identical bills HB 1266 and SB 731. On April 12, 1983, the House Energy Committee considered

*Footnote continued on the next page.*

> Current law is totally vague as to deadlines for
> royalty payments. Most leases don't specify deadlines
> either, and there is no law specifically protecting
> Texas royalty owners from deliberate delay of
> their royalty checks. Many delays stem from legiti-
> mate questions about the validity of titles or
> the whereabouts of royalty owners. But some oil
> operators have raised title questions just to
> put off payments.

[85] As a result, a new law was enacted in 1983 to allow the payee to "sue for failure to make timely payments after giving the payor 30 days' written notice." *Id.* In addition, to setting deadlines for timely payment, it required late payments to be subject to an interest penalty, unless there was a reasonable title dispute.[86] As the bill was being debated in 1983, prime rate was 10.5% and to prevent market rates from exceeding a proposed fixed 9-percent interest rate, creating an incentive to keep royalty owners' money, a floating rate of interest on late payments was tied to market conditions.[87] In April 1987, even though market interest rates had fallen

---

HB 1775 and HB 1226 together at public hearing. The House Study Group reported on the bill on April 21, 1983. The House Study Group reported arguments for and against the bill, summarizing each of the bills that had been introduced on the subject. When HB 1775 reached the House floor on April 21, 1983, same was amended to include new language for § 91.403(a) and to add § 91.405 (House Journal Report dated April 21, 1983). House Bill 1775, as amended, became effective September 1, 1983. **Prior to the 1983 enactment, no specific laws protected royalty owners from intentional practices to delay their royalty checks**. While it was generally accepted that a great deal of these delays stem from legitimate title problems, it was also recognized that some delays were intentional and should be addressed by the Legislature. **It was the admirable intent of our Legislature to compel timely payment of proceeds to royalty interest owners by those persons or entities occupying the status of a 'payor**.'" See also, *Koch v. Wilber*, 895 S.W.2d 854 (Tex.App.—Beaumont, 1995, writ denied). C.R. 229-232.

[85] CR. 229; Appendix C.

[86] CR. 229; Appendix C.

[87] *See,* Appendix B and C. TEX. NAT. RES. CODE § 91.403. PAYMENT OF INTEREST ON LATE PAYMENTS. (a) *If payment has not been made for any reason in the time limits*

*Footnote continued on the next page.*

from historical highs of 21.50% in December 1980 to 7.75%,[88] there was still no incentive for a payor to tender proceeds to all persons entitled to share in the proceeds. Therefore, the clearly stated intent and purpose of H.B. 2363 and enactment of a **new law** by the 70th Legislature in 1987,[89] was to add the incentive of a *mandatory* **MINIMUM AWARD** of monetary damages <u>and</u> reasonable attorney's fees in a final judgment "*if a suit is filed to collect proceeds and interest from the sale of oil and gas production.*"[90]

Purpose

H.B. 2363 would add an incentive of reasonable attorney's fees and a minimum award in any final judgement in favor of the plaintiff in cases involving nonpayment of oil and gas proceeds and interest on late payments.

Synopsis

H.B. 2363 amends Subchapter K, Chapter 91 of the Natural Resources Code by adding Section 91.406, providing that if a suit is filed to collect proceeds and interest from the sale of oil and gas production, the court shall include reasonable attorney's fees and a minimum award of $200 in any final judgement in favor of the plaintiff.[91]

---

*specified in Section 91.402 of this code,* the payor must pay interest to a payee beginning at the expiration of those time limits at two percentage points above the percentage rate charged on loans to depository institutions by the New York Federal Reserve Bank, unless a different rate of interest is specified in a written agreement between payor and payee."

[88] The Court is asked to take judicial notice of the historical U.S. prime interest rate history from 1980 through 1987.

[89] *See,* Appendix D. TEX. H.B. 2363, 70th Leg., R.S. (ch. 1011) (1987).

[90] CR.233-255; *See,* Appendix D (ch. 1011, § 3) "H.B. No. 2363, AN ACT relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production."

[91] CR. 238; *See,* Appendix D. (Tex. H.B. 2363, 70th Leg. R.S.—Bill Analysis)

The plain language of the **stated purpose** indicates the legislative intent was to provide a <u>minimum</u> award of $200 and reasonable attorney's fees *if the payee was forced to file to collect unpaid royalties or unpaid interest.* Under the Resources Code penalty enacted in 1983 under Sec. 91.403(c), the obligation to pay interest as well as the right to receive interest *terminated on delivery of the proceeds.* Thus, even though Genesis did not tender the statutory interest penalty until June 25, 2014, *the amount* of the penalty was fixed on the date the proceeds were finally paid, and the statutory interest penalty would never increase from that fixed amount – no matter how long or how much effort it took for Mrs. Garcia to collect the interest due.

As a result, following the 1987 enactment of Resources Code Section 91.406, unless the payor was able to establish a reasonable excuse for withholding timely payment, the royalty owner was no longer limited to collection of interest, and was instead entitled to reasonable attorney's fees and a minimum damage award as additional mandatory remedies if the essential elements of the Resources Code cause of action was proven in a court of law. There is no evidence elsewhere in the legislative history to support the theory that the *incentive* of being forced to pay for the services of an attorney hired to collect unpaid royalty or interest and

22

file suit could be circumvented, defeated, nullified, thwarted -- and the penalties avoided -- by merely waiting until the eve of trial to tender the final payment due.

The statute's title is "**ATTORNEY'S FEES** and **MINIMUM AWARD**."[92] In adopting the amendment the Legislature intended to change the existing law, and therefore the courts must give some effect to the amendment as a whole and understand the legal effect of the amendment enacted by the Legislature. By its plain terms and reading the statutory cause of action established under Sec. 91.404(a)-(b) only requires the Payor to have failed to timely pay; and continue that failure after receiving 30 days written notice without having a reasonable cause for non-payment,[93] before suit can be filed to collect unpaid oil and gas proceeds or interest. If payment is not made within thirty days of receiving written notice, and **if there is no reasonable cause for nonpayment**, judicial action can commence and the statutory penalties of Section 91.406 *are to be imposed,* in

---

[92] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE § 91.406 (emphasis added).

[93] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE § 91.404. "NONPAYMENT OF OIL AND GAS PROCEEDS OR INTEREST. (a) If a payee seeks relief for the failure of a payor to make timely payment of proceeds from the sale of oil or gas or an interest in oil or gas as required under Section 91.402 or 91.403 of this code, the payee must give the payor written notice by mail of that failure as a prerequisite to beginning judicial action against the payor for nonpayment.

(b) The payor has 30 days after receipt of the required notice from the payee in which to pay the proceeds due, or to respond by stating in writing a reasonable cause for nonpayment.

(c) A payee has a cause of action for nonpayment of oil or gas proceeds or interest on those proceeds as required in Section 91.402 or 91.403 of this code in any court of competent jurisdiction in the county in which the oil or gas well is located."

addition to statutory accrued interest. A defendant found to have violated the statute was to be held liable for a minimum statutory award of $200 in actual damages, plus reasonable attorney's fees.

Genesis' position would allow a payor to withhold payment for up to four years (the limitations period) with "no incentive" to make timely payment—**because they could entirely avoid payment of the $200 Minimum Award and the attorney's fee penalty**—as long as payment was *eventually* made at any time prior to trial. Interest rates charged by the New York Federal Reserve since 2011 have been - for the most part – *at or below 1/10th of 1%,* and only being required to pay $585.47 in statutory interest[94] as the sole penalty for holding tens of thousands of dollars in unpaid royalties for almost three years and forcing a royalty owner to hire an attorney to collect the monies due, is a license to steal that was rejected and prevented by the 70th Legislature through the enactment of the new law in 1987.

III. **THE TRIAL COURT ERRED IN FINDING SECTION 91.403 OF THE RESOURCES CODE PROVIDES THE _ONLY_ MANDATORY PENALTY FOR LATE PAYMENTS;**

   **and**

IV. **THE TRIAL COURT ERRED IN FINDING "ACTUAL" MONETARY DAMAGES ARE NECESSARY TO RECOVER A MINIMUM AWARD AND RECEIVE A FAVORABLE FINAL JUDGMENT.**

---

[94] CR. 257-271.

## A. THE LEGISLATURE IS NOT PRESUMED TO DO A USELESS ACT.

Texas courts should not adopt a construction that would render a law or provision meaningless.[95] In addition, the Legislature is not presumed to do a useless act, and the law does not permit a wrong without a remedy.[96]

In 1987, the Legislature passed a new law adopting a Minimum Award of $200.00 and requiring mandatory reasonable attorney's fees to be paid as additional penalties, "*if suit is filed to collect proceeds and interest under this subchapter.*"[97] Genesis argues that under their construction and "plain meaning" of the statute, a royalty owner suing to collect unpaid proceeds and interest can never file a lawsuit and receive *a final judgment in their favor* as long as the "actual damages" (of proceeds and interest) are paid before the case reaches trial. Genesis ignores the statute's provision that "***if actual damages ... <u>are less than $200, an additional amount</u>***" is to be included, "***so that the total amount of damages equals $200***." It is mathematically axiomatic that ZERO (0) dollars (if proceeds and interest are paid on the eve of trial) are *less than $200,* and therefore

---

[95] *Centurion Planning Corp. v. Seabrook Venture II,* 176 S.W.3d 498, 504 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[96] *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 637 (Tex. 2010) ("Courts 'do not lightly presume that the Legislature may have done a useless act.'"); *see also* TEX. GOV'T CODE ANN. § 311.021(2) (stating the presumption that the Legislature intends an entire statute to be effective); *id.* § 311.023(5) (West 2005) (providing that in construing statutes, courts may consider the consequences of a particular construction).

[97] *See,* Appendix B. TEX. NATURAL RESOURCES CODE § 91.406.

an *additional amount* is to be included in the Minimum Award to ensure that actual damages are at least $200.00. The "plain meaning" of *less than $200.00,* is Zero Dollars (0) to Two Hundred Dollars ($200.00).

The Legislature's addition of Section 91.406 to the Resources Code fundamentally altered the statute's remedial scheme, by adding additional penalties *as an incentive* to make timely payments of proceeds and interest to royalty owners. Adopting the construction imposed by Genesis relegates statutory interest calculated under Sec. 91.403 to be the only penalty – even if suit must be filed to collect proceeds or interest – and renders the *incentive* penalties enacted under Sec. 91.406 completely inoperative, superfluous, or useless.[98]

## B. GENESIS CANNOT RE-WRITE THE STATUTE TO SAY "IF ACTUAL DAMAGES <u>ARE GREATER THAN ZERO</u>."

Genesis argued that because all proceeds and accrued interest had been paid *after suit was filed*, Mrs. Garcia would not be entitled to a *favorable* judgment. Citing *In re Nalle Plastics Family, L.P.*,[99] and other breach of contract cases, Genesis argued that there is no basis to award Mrs. Garcia a *favorable* judgment under a Sec. 91.404 cause of action, because attorney's fees are not "damages."

---

[98] *City of Marshall v. City of Uncertain,* 206 S.W.3d 97, 105 (Tex. 2006); see also, *Dunnagan v. Watson,* 204 S.W.3d 30, 43 (Tex.App.—Fort Worth 2006, pet. denied).
[99] *In re Nalle Plastics*, 406 S.W.3d 168 (Tex. 2013).

While it is true that under a breach of contract, there must be a recovery of some measure of economic damages before a plaintiff is entitled to recover attorney's fees, the statutory scheme of a Resources Code recovery under Section 91.406 is not so limiting. Genesis argues that Section 91.406 must be read as only entitling a plaintiff to an additional amount *if damages are greater than zero.* But the Legislature did not write: *"if the actual damages to the plaintiff are greater than zero ..."*. Instead the Legislature created a MINIMUM AWARD of $200.00 in *actual damages,* and if actual damages *are less than $200.00*, then an award of an additional amount - so that the total amount of damages equals $200.00. The mathematical formula [0 + $200 = $200] is a fairly easy concept.

In addition, this is not the only statute that the Legislature has written which allows for an award of a minimum amount of damages and reasonable attorney's fees, without proof of any actual damages. Texas Civil Practice & Remedies Code Sec. 12.002, awards *the greater of $10,000.00 -* or actual damages as a result of someone filing a fraudulent lien or claim against real property.[100] Thus even if a plaintiff is found to have suffered no actual economic damages as a result of someone violating the fraudulent lien statute, there is still a $10,000 *minimum* statutory recovery in *actual damages* [0 + $10,000 = $10,000]. In addition to the

---

[100] TEX. CIV. PRAC. & REM. CODE SEC. 12.002(3)(b).

27

minimum award of damages, the fraudulent lien statute also includes a mandatory recovery of reasonable attorney's fees (even if there are no actual damages), as long as the three essential elements of a fraudulent lien or claim filed against real property are established by the fact finder.[101]

## C.    ONE SATISFACTION RULE DOES NOT APPLY.

After Mrs. Garcia's contractual claim against the Oil Company Defendant (LTD) was severed and the Fourth Amended Petition was filed against Genesis, Genesis argued that it would be entitled to a settlement credit against the $200 "mandatory Minimum Award" guaranteed by Section 91.406 of the Resources Code; and as a result, contended that Garcia would still be barred from recovering statutory attorney's fees *for this tort*.  However, Gloria Garcia's claim against LTD concerned their contractual failure to pay royalties under the terms of the oil and gas lease with Garcia, which was a breach of contract claim.[102]  Section 91.402(h) of the Resources Code expressly states that this statute "*shall not change or relieve the lessee's specific, expressed or implied obligations under an oil and gas lease.*"[103]

---

[101] TEX. CIV. PRAC. & REM. CODE § 12.002(a) - 12.002(3)(b); *Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.,* 167 S.W.3d 522, 530-31 (Tex. App.—Ft. Worth 2005, no pet.); *see also, Aland v. Martin,* 271 S.W.3d 424, 430 (Tex.App.—Dallas 2008, no pet.).
[102] CR. 24.
[103] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE §  91.402(h).

In contrast, Mrs. Garcia **had no contract** with Genesis. In addition to the absence of joint liability under the Resources Code violation, Genesis is barred by judicial estoppel from now claiming joint liability or joint tortfeasor status with LTD.[104] Genesis successfully obtained a partial summary judgment against LTD, taking the position that "Garcia's *other claim* under the Texas Natural Resources Code does not sound in tort, *as that claim is* **expressly statutory**."[105] In obtaining partial summary judgment, Genesis contended LTD had no exposure to any tort claims and was not a joint tortfeasor. The doctrine of judicial estoppel "precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding."[106] The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy.[107] Its essential function "is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage."[108] The species of judicial estoppel alleged in this case is "based on the principle that a party should not be

---

[104] CR.217-225.

[105] CR. 223-2224.

[106] *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008).

[107] *Pleasant Glade Assembly of God,* 264 S.W.3d at 6; *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956).

[108] *Pleasant Glade Assembly of God*, 264 S.W.3d at 6; *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 650 (Tex. App.—El Paso 1997, writ denied); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (noting basis for estoppel is the assertion of a position clearly inconsistent with a previous position accepted by the court); *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir.1982) (finding "the determinative factor is whether the appellant intentionally misled the court to gain an unfair advantage").

permitted to abuse the judicial process by obtaining one recovery based first on affirming a certain state of facts, and then another recovery based on denying the same set of facts."[109] Genesis was the first purchaser of oil produced and the only entity that suspended and maintained possession of Garcia's funds.[110] As a result Genesis was the only entity against which Gloria Garcia had a statutory Resources Code claim.

In *Bradshaw v. Baylor University*, the one-satisfaction rule was first articulated as being derived from <u>tort law</u> principles of contribution.[111] Just as in *Bradshaw*, in *Stewart Title*[112] the Texas Supreme Court emphasized that the damages all arose from the "alleged <u>misrepresentations</u> of <u>all</u> the defendants,"[113] and in *Crown Life,*[114] the Court again explained that under the one-satisfaction rule, "the non-settling defendant may only claim a credit based on the damages for which all <u>tortfeasors</u> are *jointly liable*."[115] The *Crown Life* Court went on to say that "[s]eparate or punitive damages paid by the settling defendant" on his own behalf cannot offset a judgment against a non-settling defendant, since such

---

[109] *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e).

[110] CR. 180-182 (Genesis Crude Oil, L.P.'s oil run suspense accounting).

[111] *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703, 705 (Tex. 1935).

[112] *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

[113] *Stewart Title*, 822 S.W.2d at 8.

[114] *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000).

[115] *Crown Life Ins*., 22 S.W.3d at 391.

amounts would not constitute "common damages."[116] By the same logic, in *GE Capital Commercial, Inc. v. Worthington Nat'l Bank,*[117] the Fifth Circuit held that where one claim sounds in contract and the other in tort, and the settling party and non-settling party did not share a common theory of legal liability, then factual commonality did not render Citibank a *joint tortfeasor* with Worthington for one-satisfaction rule purposes.[118]

## V. THE TRIAL COURT ERRED IN FINDING THAT GARCIA WAS NOT ENTITLED PROCEED TO TRIAL.

### A. THERE WAS A JUSTICIABLE CONTROVERSY.

Genesis argued that Mrs. Garcia was not entitled to proceed to trial, because her request for declaratory relief improperly duplicated the elements of her claim under the Resources Code. However, the Uniform Declaratory Judgment Act (UDJA) provides a basis by which a claimant can obtain a declaration of rights, status, or other legal relations under a writing *or a statute*.[119] A suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the Act itself.[120] The Legislature intended the UDJA to be remedial, to settle

---

[116] *Id.* at 391–92.

[117] *GE Capital Commercial, Inc. v. Worthington Nat. Bank,* 754 F.3d 297 (5th Cir. 2014) (applying Texas law).

[118] *GE Capital,* 754 F.3d at 309.

[119] TEX. CIV. PRAC. & REM.CODE ANN. § 37.004.

[120] *Texas Dep't of Pub. Safety v. Moore,* 985 S.W.2d 149, 153 (Tex.App.—Austin 1998, no pet.).

and afford relief from uncertainty and insecurity with respect to rights, and to be liberally construed.[121]

Under the Declaratory Judgment Act, a claimant must show that (1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought.[122] Ripeness implicates subject-matter jurisdiction and emphasizes the requirement of a concrete injury in order to present a justiciable claim.[123] Ripeness is concerned with when an action can be brought and seeks to conserve judicial time and resources for real and current controversies rather than hypothetical or remote disputes.[124] Courts of this state may not issue advisory opinions.[125] An opinion issued in a case that is not ripe would address only a hypothetical injury rather than remedying actual or imminent harm.[126]

Mrs. Garcia was involved in an actual ongoing controversy to determine whether or not she was able to prove the essential elements of the statutory Resources Code cause of action, and if so, was she entitled to the Minimum Award

---

[121] TEX. CIV. PRAC. & REM.CODE ANN. § 37.002; *Moore,* 985 S.W.2d at 153.

[122] *Moore,* 985 S.W.2d at 153.

[123] *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 851 (Tex.2000); *Patterson v. Planned Parenthood of Houston,* 971 S.W.2d 439, 442 (Tex.1998).

[124] *Gibson,* 22 S.W.3d at 851; *Patterson,* 971 S.W.2d at 442–43.

[125] *Patterson,* 971 S.W.2d at 443; *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993).

[126] *See Texas Ass'n of Bus.,* 852 S.W.2d at 444.

and recovery of her reasonable attorney's fees that had been incurred in trying to collect her oil and gas proceeds and interest since 2011. This was not a hypothetical issue. Because Genesis had suspended funds since December 2010, and refused to timely pay proceeds and interest due to her, Mrs. Garcia had been forced to file suit for Nonpayment under the Texas Natural Resources Code. Unless Genesis had a *reasonable cause for nonpayment,*[127] Mrs. Garcia was entitled to a declaration of her statutory right to proceed to trial, and obtain findings by the trier of fact whether Genesis breached its duty to timely pay proceeds under the Resources Code; whether Mrs. Garcia had given the requisite 30 day notice prior to filing suit under the provisions of the Resources Code; and whether Genesis had a *legitimate excuse* for refusing to tender a division order and/or making timely payment.

Mrs. Garcia was relying on the UDJA to provide a basis to obtain a declaration of her rights, status, and remedies under statute.[128] And while the Court *might* have found Mrs. Garcia was entitled to reasonable and necessary fees

---

[127] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE § 91.404(b): "The payor has 30 days after receipt of the required notice from the payee in which to pay the proceeds due, or to respond by stating in writing ***a reasonable cause for nonpayment***."

[128] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (West 1997); *City of Waco,* 83 S.W.3d at 177.

under the UDJA, she was relying on the Texas Natural Resources Code to establish her *statutory right* to recover reasonable attorney's fees.

### B. GARCIA WAS ENTITLED TO KEEP A BINDING DIVISION ORDER IN PLACE.

The UDJA may be used to clarify the meaning of statutes.[129] Courts have also issued declaratory judgments construing a statute before the statute is violated.[130] Genesis threw down the gauntlet in making what was actually a "conditional" tender of accrued interest on the late payments, by continuing to challenge both past or future liability to Mrs. Garcia, and disputing whether it was ever "*at any time*" the statutory "Payor" under the lease—with a continuing duty to keep in place a *binding division order*.[131]

> This unconditional tender does not amount to a waiver or acknowledgement that Genesis is or was a "payor" vis-à-vis Ms. Garcia under the Texas Natural Resources Code at any time, or that Genesis has or had any liability to Ms. Garcia for the payment of royalties in connection with this property.

[132]. According to Sec. 91.402(e) of the Resources Code, division orders are binding *only* for the time and to the extent that they have been acted on and made the basis of settlements and payments – **and from the time that notice is given**

---

[129] *Frasier v. Yanes,* 9 S.W.3d 422, 427 (Tex.App.—Austin 1999, no pet.).
[130] *The Pea Picker, Inc. v. Reagan,* 632 S.W.2d 674, 677 (Tex.App.—Tyler 1982, writ ref'd n.r.e.) (trial court had power to construe Open Meetings Act and determine whether notice must be given and when meeting is required to be open).
[131] CR. 187.
[132] *Id.*

**that settlements will not be made on the basis provided in them,** *they cease to be binding*.[133] Division orders may be terminated with thirty days notice by either party.[134] In addition, the statute places the burden *on the Payor* to submit a division order to the payee for its signature; it is not the royalty owner or mineral interest owner's burden to draft its own division order, sign it, and submit it to the payor.[135] In order to avoid the necessity for future litigation, Mrs. Garcia asked the trial court to determine the status and continuing duties and obligations of the parties and declare whether Genesis had a duty to maintain a binding division order reflecting the ownership interests of Gloria Garcia in the Willie De La Fuente lease *as long as Genesis remained the Payor under the lease*.[136]

### CONCLUSION & PRAYER

The trial court erred in finding that the cause of action for non-payment of oil or gas proceeds and interest under Section 91.404(c) of the Texas Natural Resources Code was extinguished, and declaring that Gloria Garcia was entitled to

---

[133] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE § 91.402(e) ("Division orders are binding for the time and to the extent that they have been acted on and made the basis of settlements and payments, and, *from the time that notice is given that settlements will not be made on the basis provided in them, they cease to be binding*.") (emphasis added).

[134] *See,* Appendix B. TEXAS NATURAL RESOURCES CODE § 91.402(e) ("Division orders are terminable by either party on 30 days written notice."), *see also, Phillips Petroleum Co. v. Williams*, 158 F.2d 723, 727 (5th Cir. 1946).

[135] *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 560 (Tex.App.—San Antonio 2011, no pet.).

[136] CR. 69-70, 72.

a "take nothing" judgment.[137] The trial court erred in making a determination that statutory interest under Section 91.403(a) of the Texas Natural Resources Code was the only mandatory penalty – even if suit was filed to collect unpaid oil and gas proceeds and interest. The trial court erred in determining that if suit was filed, the Minimum Award of $200.00 under Section 91.406 of the Texas Natural Resources Code meant a plaintiff must have actual damages "*greater than zero*" at the time of trial, instead of "*less than $200.00*." The trial court erred in refusing to consider the Legislature's intent in enacting a $200 Minimum Award and attorney's fees under Section 91.406, and declaring that Gloria Garcia was entitled to a "take nothing" judgment on this claim. Finally, the trial court erred in preventing Mrs. Garcia from proceeding to trial on the essential elements of the Resources Code lawsuit, or obtaining a declaration of the continuing duties and obligations of the parties under Section 91 of the Texas Natural Resources Code.

Accordingly, this Court should reverse the trial court's order granting Genesis' Motion for Final Summary Judgment to the extent it ruled that Gloria Garcia "take nothing" on the cause of action established under Texas Natural Resources Code Section 91.404, as it was not extinguished by late payment of proceeds and statutory interest. This Court should also reverse the order of the

---

[137] *See,* Appendix A.

36

trial court that granted Genesis a favorable judgment on Gloria Garcia's Texas Natural Resources Section 91.406 claim of a Minimum Award of $200.00, and reasonable attorney's fees.

After reversing the trial court, this Court should render as follows:

1.      That a suit filed to collect proceeds and interest under the Texas Natural Resources Code Section 91.404 cause of action, is not extinguished by payment of proceeds and statutory interest.

2.      That the statutory interest penalty established under Texas Natural Resources Code Section 91.403 is not the only mandatory penalty to be imposed, if a plaintiff has filed suit to collect proceeds and interest.

3.      That a plaintiff is entitled to a favorable final judgment if he or she can establish the essential elements of a cause of action filed under Texas Natural Resources Code Section 91.404.

4.      That "*if actual damages ... are less than $200.00*" means that a plaintiff who files suit to collect proceeds and interest under the Texas Natural Resources Code and establishes the essential elements of the Section 91.404 cause of action, is entitled to a Minimum Award of $200, and if actual damages at trial are zero, "*an additional amount so that the total amount of damages equals $200,*" plus reasonable attorney's fees.

5.      That Genesis failed to make timely payments of oil and gas proceeds to Gloria Garcia after December 1, 2010; Gloria Garcia gave written notice of the failure to pay as a prerequisite to beginning judicial action for nonpayment; more than 30 days elapsed after notice was given before suit was filed; Genesis had no reasonable cause for non-payment; and Gloria Garcia filed suit to collect proceeds and interest under the Texas Natural Resources Code.

6.      That Gloria Garcia is entitled to a Minimum Award of $200.00 in actual damages and $51,786.50, as a fair and reasonable fee for the necessary legal services rendered to Gloria Garcia through July 23, 2014.

37

With respect to reasonable attorney's fees incurred by Gloria Garcia since July 23, 2014, this Court should remand the case for trial before a jury, for this limited purpose. This Court should further grant all other relief, at law or in equity, to which Gloria Garcia is entitled.

Respectfully submitted,

James R. Harris
State Bar No. 09066000
**HARRIS & GREENWELL-OF COUNSEL**
The Six Hundred Building
600 Leopard Street, Suite 924
Corpus Christi, Texas 78401
Telephone: (361) 929-5362
Facsimile: (361) 462-4580
Email:       jharris@harris-greenwell.com

**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 2800-S
Corpus Christi, Texas 78401
Telephone: (361) 883-1946
Facsimile: (361) 882-2900
Email: agreenwell@harris-greenwell.com

By: _____
        Andrew M. Greenwell
        State Bar No. 00784170

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 9,497 words.

By: _____
James R. Harris

## CERTIFICATE OF SERVICE

I hereby certify, by my signature above, that on the 27th day of February, 2015, the foregoing document has been served to the following via e-service.

Everard A. Marseglia, Jr.
emarseglia@liskow.com
James T. Kittrell
jkittrell@liskow.com
First City Tower
1001 Fannin Street, Suite 1800
Houston, Texas 77002

Hon. Martin J. Chiuminatto, Jr.
mchium2@gmail.com
229th District Court – Duval County
P. O. Box 1482
Kingsville, Texas 78364-1482

**APPENDICES**

Order Granting Genesis Crude Oil, L.P.'s Motion for Final Summary Judgment dated November 3, 2014.................................................................A

TEX. NATURAL RESOURCES CODE §    91.401-91.406...........................................B

Tex. H.B. 1775, 68th Leg., R.S. 1983 (Bill Analysis)..............................................C

Tex. H.B. 2363, 70th Leg., R.S. 1987.......................................................D

# APPENDIX A

ORDER

(granting final summary judgment)

signed Nov. 3, 2014

**ORIGINAL**

FILED AT __10:55__ O'CLOCK __A__ M

NOV 1 2 2014

R. BARTON, CLERK
DISTRICT CLERK, DUVAL COUNTY, TEXAS
BY_____ DEPUTY

CAUSE NO: DC-12-200

| | | |
|---|---|---|
| GLORIA GARCIA, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| L.T.D. EXPLORATIONS, INC., | § | DUVAL COUNTY, TEXAS |
| LARRY T. DONAHO, DEBRA A. | § | |
| DONAHO, TEXAS GREEN GOLD | § | |
| LLC, DAVID L. DONAHO, LYNNAE | § | |
| DONAHO, SUN EXPLORATION, | § | |
| INC., AND GENESIS CRUDE OIL, L.P. | § | |
| Defendants. | § | 229TH JUDICIAL DISTRICT |

## ORDER

On this day came on to be heard Defendant Genesis Crude Oil, L.P's Motion for Final Summary Judgment. After considering the motion, the response, the pleadings on file, and the arguments of counsel, if any, the Court is of the opinion that Genesis Crude Oil, L.P's Motion for Final Summary Judgment should be **GRANTED**.

It is therefore **ORDERED** that Defendant Genesis Crude Oil, L.P's Motion for Final Summary Judgment is **GRANTED**.

The Court **ORDERS** that Plaintiff Gloria Garcia take nothing on her cause of action against Defendant Genesis Crude Oil, L.P. for non-payment of oil or gas proceeds and interest pursuant to Tex. Nat. Res. Code § 91.404(c) and that **JUDGMENT** be entered accordingly.

**00296**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

ORIGINAL

Additionally, the Court **ORDERS** that Plaintiff Gloria Garcia take nothing on her claim against Genesis Crude Oil, L.P. for attorney's fees and a mandatory minimum of $200.00 pursuant to Tex. Nat. Res. Code § 91.406 and that **JUDGMENT** be entered accordingly.

This is a final summary judgment. All relief not expressly granted herein is **DENIED**. This order is final and appealable.

SIGNED this 3rd day of November, 2014.

_____
JUDGE PRESIDING

-2-

**00297**
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# APPENDIX B

TEX. NATURAL RESOURCES CODE

§ 91.401-91.406

SUBCHAPTER J. PAYMENT FOR PROCEEDS OF SALE

        Sec. 91.401.  DEFINITIONS.  In this subchapter:

        (1)  "Payee" means any person or persons legally entitled to
payment from the proceeds derived from the sale of oil or gas from an oil or
gas well located in this state.

        (2)  "Payor" means the party who undertakes to distribute oil
and gas proceeds to the payee, whether as the purchaser of the production of
oil or gas generating such proceeds or as operator of the well from which
such production was obtained or as lessee under the lease on which royalty is
due.  The payor is the first purchaser of such production of oil or gas from
an oil or gas well, unless the owner of the right to produce under an oil or
gas lease or pooling order and the first purchaser have entered into
arrangements providing that the proceeds derived from the sale of oil or gas
are to be paid by the first purchaser to the owner of the right to produce
who is thereby deemed to be the payor having the responsibility of paying
those proceeds received from the first purchaser to the payee.

        (3)  "Division order" means an agreement signed by the payee
directing the distribution of proceeds from the sale of oil, gas, casinghead
gas, or other related hydrocarbons.  The order directs and authorizes the
payor to make payment for the products taken in accordance with the division
order.  When used herein "division order" shall also include "transfer
order".

        (4)  "Transfer order" means an agreement signed by a payee and
his transferee (new payee) directing the payor under the division order to
pay another person a share in the oil or gas produced.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, Sec. 1, eff. Sept. 1, 1983.
Amended by Acts 1991, 72nd Leg., ch. 650, Sec. 1, eff. Aug. 26, 1991.

        Sec. 91.402.  TIME FOR PAYMENT OF PROCEEDS.

        (a)  The proceeds derived from the sale of oil or gas production from
an oil or gas well located in this state must be paid to each payee by payor
on or before 120 days after the end of the month of first sale of production
from the well. After that time, payments must be made to each payee on a
timely basis according to the frequency of payment specified in a lease or
other written agreement between payee and payor.  If the lease or other
agreement does not specify the time for payment, subsequent proceeds must be
paid no later than:

        (1)  60 days after the end of the calendar month in which
subsequent oil production is sold;  or

        (2)  90 days after the end of the calendar month in which
subsequent gas production is sold.

        (b)  Payments may be withheld without interest beyond the time limits
set out in Subsection (a) of this section when there is:

(1) a dispute concerning title that would affect distribution of payments;

(2) a reasonable doubt that the payee:

(A) has sold or authorized the sale of its share of the oil or gas to the purchaser of such production; or

(B) has clear title to the interest in the proceeds of production;

(3) a requirement in a title opinion that places in issue the title, identity, or whereabouts of the payee and that has not been satisfied by the payee after a reasonable request for curative information has been made by the payor.

(c)(1) As a condition for the payment of proceeds from the sale of oil and gas production to payee, a payor shall be entitled to receive a signed division order from payee containing only the following provisions:

(A) the effective date of the division order, transfer order, or other instrument;

(B) a description of the property from which the oil or gas is being produced and the type of production;

(C) the fractional and/or decimal interest in production claimed by payee, the type of interest, the certification of title to the share of production claimed, and, unless otherwise agreed to by the parties, an agreement to notify payor at least one month in advance of the effective date of any change in the interest in production owned by payee and an agreement to indemnify the payor and reimburse the payor for payments made if the payee does not have merchantable title to the production sold;

(D) the authorization to suspend payment to payee for production until the resolution of any title dispute or adverse claim asserted regarding the interest in production claimed by payee;

(E) the name, address, and taxpayer identification number of payee;

(F) provisions for the valuation and timing of settlements of oil and gas production to the payee; and

(G) a notification to the payee that other statutory rights may be available to a payee with regard to payments.

(2) Such a division order does not amend any lease or operating agreement between the interest owner and the lessee or operator or any other contracts for the purchase of oil or gas.

(d)  In the alternative, the provisions of Subsection (c) of this section may be satisfied by a division order for oil payments in substantially the following form and content:

DIVISION ORDER


TO:                    (Payor)Property No.


                       Effective
(Date)


     The undersigned severally and not jointly certifies it is the legal owner of the interest set out below of all the oil and related liquid hydrocarbons produced from the property described below:

     OPERATOR:

Property name:

County:                State:

Legal Description:

OWNER NO.              TAX I.D./SOC. SEC. NO. PAYEE

DIVISION OF INTEREST

     THIS AGREEMENT DOES NOT AMEND ANY LEASE OR OPERATING AGREEMENT BETWEEN THE INTEREST OWNERS AND THE LESSEE OR OPERATOR OR ANY OTHER CONTRACTS FOR THE PURCHASE OF OIL OR GAS.

     The following provisions apply to each interest owner ("owner") who executes this agreement:

     TERMS OF SALE:  The undersigned will be paid in accordance with the division of interests set out above.  The payor shall pay all parties at the price agreed to by the operator for oil to be sold pursuant to this division order.  Purchaser shall compute quantity and make corrections for gravity and temperature and make deductions for impurities.

     PAYMENT:  From the effective date, payment is to be made monthly by payor's check, based on this division of interest, for oil run during the preceding calendar month from the property listed above, less taxes required by law to be deducted and remitted by payor as purchaser.  Payments of less than $100 may be accrued before disbursement until the total amount equals $100 or more, or until 12 months' proceeds accumulate, whichever occurs first.  However, the payor may hold accumulated proceeds of less than $10 until production ceases or the payor's responsibility for making payment for production ceases, whichever occurs first.  Payee agrees to refund to payor any amounts attributable to an interest or part of an interest that payee does not own.

INDEMNITY:  The owner agrees to indemnify and hold payor harmless from all liability resulting from payments made to the owner in accordance with such division of interest, including but not limited to attorney fees or judgments in connection with any suit that affects the owner's interest to which payor is made a party.

DISPUTE;  WITHHOLDING OF FUNDS:  If a suit is filed that affects the interest of the owner, written notice shall be given to payor by the owner together with a copy of the complaint or petition filed.

In the event of a claim or dispute that affects title to the division of interest credited herein, payor is authorized to withhold payments accruing to such interest, without interest unless otherwise required by applicable statute, until the claim or dispute is settled.

TERMINATION:  Termination of this agreement is effective on the first day of the month that begins after the 30th day after the date written notice of termination is received by either party.

NOTICES:  The owner agrees to notify payor in writing of any change in the division of interest, including changes of interest contingent on payment of money or expiration of time.

No change of interest is binding on payor until the recorded copy of the instrument of change or documents satisfactorily evidencing such change are furnished to payor at the time the change occurs.

Any change of interest shall be made effective on the first day of the month following receipt of such notice by payor.

Any correspondence regarding this agreement shall be furnished to the addresses listed unless otherwise advised by either party.

In addition to the legal rights provided by the terms and provisions of this division order, an owner may have certain statutory rights under the laws of this state.

| Witness | Signature of Interest Owner | Social Security/ Tax I.D. No. | Address |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Failure to furnish your Social Security/Tax I.D. number will result in withholding tax in accordance with federal law, and any tax withheld will not be refundable by payor.

(e)  If an owner in a producing property will not sign a division order because it contains provisions in addition to those provisions provided for in this section, payor shall not withhold payment solely because of such refusal.  If an owner in a producing property refuses to sign a division order which includes only the provisions specified in Subsection (c) of this

section, payor may withhold payment without interest until such division order is signed.

(f)  Payment may be remitted to a payee annually for the aggregate of up to 12 months' accumulation of proceeds if the payor owes the payee a total amount of $100 or less for production from all oil or gas wells for which the payor must pay the payee.  However, the payor may hold accumulated proceeds of less than $10 until production ceases or the payor's responsibility for making payment for production ceases, whichever occurs first.  On the written request of the payee, the payor shall remit payment of accumulated proceeds to the payee annually if the payor owes the payee less than $10.  On the written request of the payee, the payor shall remit payment of proceeds to the payee monthly if the payor owes the payee more than $25 but less than $100.

(g)  Division orders are binding for the time and to the extent that they have been acted on and made the basis of settlements and payments, and, from the time that notice is given that settlements will not be made on the basis provided in them, they cease to be binding.  Division orders are terminable by either party on 30 days written notice.

(h)  The execution of a division order between a royalty owner and lessee or between a royalty owner and a party other than lessee shall not change or relieve the lessee's specific, expressed or implied obligations under an oil and gas lease, including any obligation to market production as a reasonably prudent lessee.  Any provision of a division order between payee and its lessee which is in contradiction with any provision of an oil and gas lease is invalid to the extent of the contradiction.

(i)  A division order may be used to clarify royalty settlement terms in the oil and gas lease.  With respect to oil and/or gas sold in the field where produced or at a gathering point in the immediate vicinity, the terms "market value," "market price," "prevailing price in the field," or other such language, when used as a basis of valuation in the oil and gas lease, shall be defined as the amount realized at the mouth of the well by the seller of such production in an arm's-length transaction.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, Sec. 1, eff. Sept. 1, 1983. Amended by Acts 1991, 72nd Leg., ch. 650, Sec. 2, eff. Aug. 26, 1991;  Acts 1995, 74th Leg., ch. 681, Sec. 1, eff. June 15, 1995.

Sec. 91.403.  PAYMENT OF INTEREST ON LATE PAYMENTS.  (a)  If payment has not been made for any reason in the time limits specified in Section 91.402 of this code, the payor must pay interest to a payee beginning at the expiration of those time limits at two percentage points above the percentage rate charged on loans to depository institutions by the New York Federal Reserve Bank, unless a different rate of interest is specified in a written agreement between payor and payee.

(b)  Subsection (a) of this section does not apply where payments are withheld or suspended by a payor beyond the time limits specified in Section 91.402 of this code because of the conditions enumerated in Section 91.402 of this code.

(c)  The payor's obligation to pay interest and the payee's right to receive interest under Subsection (a) of this section terminate on delivery of the proceeds and accumulated interest to the comptroller as provided by Title 6, Property Code.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, Sec. 1, eff. Sept. 1, 1983. Amended by Acts 1985, 69th Leg., ch. 230, Sec. 18, eff. Sept. 1, 1985;  Acts 1991, 72nd Leg., ch. 650, Sec. 3, eff. Aug. 26, 1991;  Acts 1991, 72nd Leg., ch. 676, Sec. 1, eff. Sept. 1, 1991;  Acts 1997, 75th Leg., ch. 1037, Sec. 39, eff. Sept. 1, 1997;  Acts 1997, 75th Leg., ch. 1423, Sec. 14.15, eff. Sept. 1, 1997.

Sec. 91.404.  NONPAYMENT OF OIL AND GAS PROCEEDS OR INTEREST.  (a)  If a payee seeks relief for the failure of a payor to make timely payment of proceeds from the sale of oil or gas or an interest in oil or gas as required under Section 91.402 or 91.403 of this code, the payee must give the payor written notice by mail of that failure as a prerequisite to beginning judicial action against the payor for nonpayment.

(b)  The payor has 30 days after receipt of the required notice from the payee in which to pay the proceeds due, or to respond by stating in writing a reasonable cause for nonpayment.

(c)  A payee has a cause of action for nonpayment of oil or gas proceeds or interest on those proceeds as required in Section 91.402 or 91.403 of this code in any court of competent jurisdiction in the county in which the oil or gas well is located.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, Sec. 1, eff. Sept. 1, 1983.

Sec. 91.405.  EXEMPTIONS.  This subchapter does not apply to any royalties that are payable to:

(1)  the board of regents of The University of Texas System under a lease of land dedicated to the permanent university fund;  or

(2)  the General Land Office as provided by Subchapter D, Chapter 52, of this code.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, Sec. 1, eff. Sept. 1, 1983.

Sec. 91.406.  ATTORNEY'S FEES AND MINIMUM AWARD.  If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1)  reasonable attorney's fees;  and

(2)  if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

Added by Acts 1987, 70th Leg., ch. 1011, Sec. 1, eff. Aug. 31, 1987.

# APPENDIX C

TEX. H.B. 1773, 68th Leg. R.S. 1983

(Bill Analysis)

HOUSE
STUDY
GROUP bill analysis        4/21/83         HB 1775
                                             Hanna

SUBJECT:     Deadlines for paying oil and gas royalties

COMMITTEE:   Energy:  favorable, without amendment

VOTE:       5 ayes--Hanna, Agnich, Coody, Craddick, B. Hall

            0 nays

            4 absent--Cary, Clark, Bomer, Hackney

WITNESSES:  None

DIGEST:     This bill sets requirements for timely payment of proceeds from the sale of oil and gas and specifies procedures for cases of late payment or nonpayment. The bill would require that payments to each person entitled to a share of the proceeds from the production be made within 120 days after the end of the month of the first sale of the output of an oil or gas well. The bill also sets deadlines for payments from subsequent sales. Late payments would be subject to an interest penalty, unless payment was withheld because of a title dispute affecting allocation of the proceeds or because of a reasonable question concerning either the payee's entitlement to share in the proceeds or the payee's whereabouts. A payee could sue for failure to make timely payments after giving the payor 30 days' written notice.

Current law is totally vague as to deadlines for royalty payments. Most leases don't specify deadlines either, and there is no law specifically protecting Texas royalty owners from deliberate delay of their royalty checks. Many delays stem from legitimate questions about the validity of titles or the whereabouts of royalty owners. But some oil operators have raised title questions just to put off payments.

The drilling boom a few years ago brought a lot of new investors into the Texas oil and gas business, including some fly-by-night operators; high interest rates gave marginal operators an incentive to hold onto other people's money as long as possible. Increased bankruptcies caused by the recent decline in the industry have aggravated problems of late payment and nonpayment. HB 846, by Craddick, already passed by the House, addresses the problem of bankruptcies more directly. But HB 1775 is also needed, to establish some guidelines in cases of late payment and nonpayment. All the associations of producers and royalty owners support this bill.



EXHIBIT

5

22

00229

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

SUPPORTERS SAY: (continued)

The 120-day deadline for payment after first purchase is reasonable. A moderately long grace period is needed at the beginning of a drilling and production operation. Sometimes a well is drilled and starts producing before all title questions are resolved. It may take 30 to 45 days to get an abstract, and another 30 to 45 days to get a title opinion. Sometimes royalty owners delay in responding to division orders. When drilling starts may also be influenced by the expiration date of a lease or the availability of drilling rigs. Title questions may be very complex--East Texas, for example, is full of title problems, with missing people, split interests, and improperly-worded deeds.

Specifying a fixed 9-percent interest rate to be added to late payments will simplify accounting procedures.

The oil industry would not support a proposal to require that royalty payments be put in escrow until title questions are resolved. This would require having to set up too many accounts. Wyoming has an escrow requirement, and oil operators have had a lot of problems with it. An escrow requirement would be unfair to legitimate oil companies, which may already be burdened with extra expenses when title questions are involved.

There is no need for an additional provision requiring payment deadlines in future leases, as some have proposed. Royalty owners would be sufficiently protected under this bill. Leases may include payment-deadline agreements under existing law.

OPPONENTS SAY:

This bill would allow routine delays of 120 to 150 days in making royalty payments, depending on which day of the month the oil or gas was sold, even in cases when there are no title problems. This is too long. The bill should be amended to set a 60- or 90-day deadline, except when title problems give reasonable cause for delay.

The bill should be amended to specify a floating interest rate on late payments, tied to market conditions. Otherwise, when market interest rates exceed the statutory rate, payors would have an incentive to keep royalty owners' money longer than they should.

23

**00230**
Cause No. DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

OPPONENTS SAY: (continued)

The bill should be amended to require that, when payment is delayed because of a title question, the royalty money must be put in an escrow account. If the money is not placed in escrow, royalty owners run a greater risk when a producer goes bankrupt or an unscrupulous operator absconds.

The bill should require that all future leases contain payment deadlines at least as stringent as those specified in the bill. This would give more notice to royalty owners of their protection against late payments.

NOTES:

SB 731, by Traeger, and its companion HB 1266, by Coody, would require payment within 60 days of the date of first sale, and within 45 days after the end of the calendar month of subsequent sales. SB 731 and HB 1266 specify a 12-percent interest rate on late payments, require that payments delayed due to title questions be put in a separate account, allow payees to recover court costs and attorney's fees when they win a judgment involving a late payment, and specify that, if payment is delayed to any person pending determination of valid title or location of the payee, the delay would not affect the timeliness of payment owed to other royalty owners. SB 731 has been referred to the Senate Natural Resources Committee. HB 1266 was heard in the House Energy Committee on April 12, with no action taken.

SB 146, by Blake, would require that royalty payments be made within 90 days of first sale, with an annual interest rate of 18 percent on the unpaid balance of late payments. SB 146 would require oil and gas exploration and production leases to state payment deadlines and would allow royalty owners who win court judgments in cases of late payment to recover court costs and attorney's fees. SB 146 has been referred to the Senate Natural Resources Committee.

HB 846, by Craddick, has been passed by the House and was scheduled for a hearing in the Senate Natural Resources Committee on April 20. HB 846 would provide an automatic security interest (secured claim) for owners and royalty-holders that would allow them a priority claim against a purchaser who failed to pay.

24

00231
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# APPENDIX D

TEX. H.B. 2363, 70th Leg. R.S. 1987

1997 APR -1 PM 3:47

HOUSE OF REPRESENTATIVES

I certify that the attached is a true and
correct copy of HB 2363
was filed of record on _____ MAR 13 1987
and referred to the committee on:
Energy

Betty Murray
Chief Clerk of the House

FILED MAR 13 1987

By _Hackney_

H_.B. No. 2363

A BILL TO BE ENTITLED

AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its

70R4490 DAK-D                    1

EXHIBIT
6

00233

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

passage, and it is so enacted.

**00234**
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

By Hackney                                    H.B. No. 2363

## A BILL TO BE ENTITLED

AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its

70R4490 DAK-D                     1

**00235**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

H.B. No. 2363

passage, and it is so enacted.

2

**00236**
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# COMMITTEE REPORT

The Honorable Gib Lewis
Speaker of the House of Representatives

*4-27-87*
(date)

Sir:

We, your COMMITTEE ON ENERGY,

to whom was referred __HB 2363__ have had the same under consideration and beg to report
(measure)

back with the recommendation that it

(✓) do pass, without amendment.
( ) do pass, with amendment(s).
( ) do pass and be not printed; a Complete Committee Substitute is recommended in lieu of the original measure.

A fiscal note was requested. (✓) yes ( ) no          An actuarial analysis was requested. ( ) yes (✓) no

An author's fiscal statement was requested. ( ) yes (✓) no

The Committee recommends that this measure be placed on the ~~(local)~~ or (Consent) Calendar.

This measure ( ) proposes new law.   (✓) amends existing law.

House Sponsor of Senate Measure _____

The measure was reported from Committee by the following vote:

| | AYE | NAY | PNV | ABSENT |
|---|---|---|---|---|
| Hackney, Ch. | ✓ | | | |
| Clark, V.C. | | | | ✓ |
| McWilliams, C.B.O. | ✓ | | | |
| Agnich | ✓ | | | |
| Craddick | ✓ | | | |
| Pennington | ✓ | | | |
| Smith, A. | ✓ | | | |
| Smithee | | | | ✓ |
| Yost | ✓ | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total
__7__ aye
__0__ nay
__0__ present, not voting
__2__ absent

CHAIRMAN

COMMITTEE COORDINATOR

00237

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

## BILL ANALYSIS

H. B. 2363                                      Committee on Energy
By: Hackney

### Background

Chapter 91 of the Natural Resources Code deals with regulation of
oil and gas production by the Railroad Commission of Texas. In
1983, the 68th Legislature amended Chapter 91 by adding
Subchapter K, which provides that a person or persons entitled to
payment from the proceeds derived from the sale of oil or gas has
a cause of action for nonpayment in a court of competent
jurisdiction. Since many of these claims involve relatively
small amounts of money, it is sometimes difficult for an
individual to have a cause resolved in court.

### Purpose

H.B. 2363 would add an incentive of reasonable attorney's fees
and a minimum award in any final judgement in favor of the
plaintiff in cases involving nonpayment of oil and gas proceeds
and interest on late payments.

### Synopsis

H.B. 2363 amends Subchapter K, Chapter 91 of the Natural
Resources Code by adding Section 91.406, providing that if a suit
is filed to collect proceeds and interest from the sale of oil
and gas production, the court shall include reasonable attorney's
fees and a minimum award of $200 in any final judgement in favor
of the plaintiff.

### Rulemaking Authority

It is the opinion of the committee that this bill does not
delegate any rulemaking authority to a state agency, officer,
department, or institution.

### Summary of Committee Action

H.B. 2363 was considered in a public hearing on April 27, 1987.
Testifying for the bill was Seldon B. Graham, Jr., attorney,
representing himself. Not testifying, but appearing to register
support for the bill were: Warren R. Anderson, representing the
National Association of Royalty Owners; Morris Burns,
representing the West Central Texas Oil and Gas Association; Joe
C. Hanna, representing TIPRO, North Texas Oil and Gas, and a
number of other oil and gas associations; Dan Jones, representing
the East Texas Producers and Royalty Owners Association; and
Scott Anderson, representing TIPRO. There were no other
witnesses. At the April 27, 1987 meeting a motion was made to
report H.B. 2363 favorably, with the recommendation that it be
placed on the consent calendar. The motion carried by a vote of 7
ayes, 0 nays, 0 PNV, and 2 absent.



**00238**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

April 27, 1987

TO:   Honorable Clint Hackney, Chair          In Re:  House Bill No. 2363
      Committee on Energy                              By:  Hackney
      House of Representatives
      Austin, Texas

FROM: Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 2363 (relating
to attorney's fees and damages in a suit for failure to timely pay proceeds
derived from the sale of oil or gas production) this office has determined the
following:

     No fiscal implication to the State or units of local government is
anticipated.

Source:  LBB Staff:  JO, HES, JWH, AL, LV

70FHB2363                                    3                          R1

**00239**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

By Hackney                                          H.B. No. 2363

A BILL TO BE ENTITLED

AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its

70R4490 DAK-D                    1

00240
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

H.B. No. 2363

passage, and it is so enacted.

2

00241

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

## LEGISLATIVE BUDGET BOARD
Austin, Texas

## FISCAL NOTE

April 27, 1987

TO:    Honorable Clint Hackney, Chair          In Re:  House Bill No. 2363
       Committee on Energy                        By:  Hackney
       House of Representatives
       Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 2363 (relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production) this office has determined the following:

    No fiscal implication to the State or units of local government is anticipated.

Source:  LBB Staff:  JO, HES, JWH, AL, LV

70FHB2363

1

R1

**00242**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

By: Hackney (Senate Sponsor - Santiesteban)     H.B. No. 2363
(In the Senate - Received from the House May 11, 1987; May 12, 1987, read first time and referred to Committee on Natural Resources; May 21, 1987, reported favorably by the following vote: Yeas 6, Nays 0; May 21, 1987, sent to printer.)

COMMITTEE VOTE

|              | Yea | Nay | PNV | Absent |
|--------------|-----|-----|-----|--------|
| Santiesteban | x   |     |     |        |
| Montford     |     |     |     | x      |
| Armbrister   | x   |     |     |        |
| Brown        | x   |     |     |        |
| Lyon         |     |     |     | x      |
| Sarpalius    |     |     |     | x      |
| Sims         | x   |     |     |        |
| Tejeda       | x   |     |     |        |
| Uribe        |     |     |     | x      |
| Whitmire     |     |     |     | x      |
| Zaffirini    | x   |     |     |        |

A BILL TO BE ENTITLED
AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

* * * * *

Austin, Texas
May 21, 1987

Hon. William P. Hobby
President of the Senate

Sir:

We, your Committee on Natural Resources to which was referred H.B. No. 2363, have had the same under consideration, and I am instructed to report it back to the Senate with the recommendation that it do pass and be printed.

Santiesteban, Chairman

1

**00243**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

May 19, 1987

TO:   Honorable H. Tati Santiesteban, Chairman      In Re:  House Bill No. 2363,
      Committee on Natural Resources                        as engrossed
      Senate Chamber                                        By:  Hackney
      Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 2363, as
engrossed (relating to attorney's fees and damages in a suit for failure to
timely pay proceeds derived from the sale of oil or gas production) this office
has determined the following:

     No fiscal implication to the State or units of local government is
anticipated.

Source:  LBB Staff:  JO, HES, JWH, AL, AF

70FHB2363ae

**00244**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

April 27, 1987

TO:    Honorable Clint Hackney, Chair          In Re:  House Bill No. 2363
       Committee on Energy                              By:  Hackney
       House of Representatives
       Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 2363 (relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production) this office has determined the following:

   No fiscal implication to the State or units of local government is anticipated.

Source: LBB Staff:  JO, HES, JWH, AL, LV

70FHB2363                                                                R1

**00245**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

## SENATE FAVORABLE COMMITTEE REPORT

Lt. Governor William P. Hobby
President of the Senate

_5/20 3:05_
(date)/(time)

Sir:

We, your Committee on ___NATURAL RESOURCES___ to which was referred
__HB 2363__ by __Hackney__ have on __5/20__, 19_87_, had the same
(measure)          (sponsor)          (hearing date)

under consideration and I am instructed to report it back with the recommendation (s) that it

_X_ do pass and be printed

( ) do pass and be ordered not printed

_X_ and is recommended for placement on the Local and Uncontested Bills Calendar.

A fiscal note was requested.          _(X) yes_     ( ) no

A revised fiscal note was requested.   ( ) yes     _(X) no_

An actuarial analysis was requested.   ( ) yes     _(X) no_

Considered by subcommittee.            ( ) yes     _(X) no_

Senate Sponsor of House Measure __Santiesteban__

The measure was reported from Committee by the following vote:

| | YEA | NAY | PNV | ABSENT |
|---|---|---|---|---|
| Santiesteban, Chairman | ✓ | | | |
| Montford, Vice Chairman | | | | ✓ |
| Armbrister | ✓ | | | |
| Brown | ✓ | | | |
| Lyon | | | | ✓ |
| Sarpalius | | | | ✓ |
| Sims | ✓ | | | |
| Tejeda | ✓ | | | |
| Uribe | | | | ✓ |
| Whitmire | | | | ✓ |
| Zaffirini | ✓ | | | |
| TOTAL VOTES | 6 | 0 | 0 | 5 |

_____          _____
COMMITTEE CLERK            CHAIRMAN

Paper clip the original and one copy of this form to the original bill and retain one copy for your file.

00246
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

# REQUEST FOR LOCAL & UNCONTESTED CALENDAR
## PLACEMENT

Hon. Roy Blake, Chairman
Administration Committee

Sir:

Notice is hereby given that __HB 2363__ , by: __Hackney (Santistitva)__

was heard by the Committee on __hat les__ on __5/20__, 19 __37__
and reported out with the recommendation that it be placed on the Local and Uncontested
Calendar.

_____
Clerk of the reporting committee

IMPORTANT: A COPY OF THIS FORM MUST BE ATTACHED TO A PRINTED COPY OF
THE BILL OR RESOLUTION, WHICH ALONG WITH 14 ADDITIONAL COPIES OF THE
BILL OR RESOLUTION SHOULD BE DELIVERED TO THE OFFICE OF THE
COMMITTEE ON ADMINISTRATION, ROOM 419. PLEASE CALL 3-0350 IF YOU HAVE
ANY QUESTIONS. DEADLINE FOR SUBMITTING BILLS FOR THE LOCAL CALENDAR
IS 4:00 P.M. THURSDAYS.

Paper clip the original to the bill; retain one copy for reporting committee files; deliver one copy to the bill sponsor.

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

00247

$\cancel{F}$

**ENROLLED**

AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its

1

**00248**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

H.B. No. 2363

passage, and it is so enacted.

2

**00249**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

H.B. No. 2363

_____      _____
President of the Senate                Speaker of the House

    I certify that H.B. No. 2363 was passed by the House  on  May
8, 1987, by a non-record vote.


                                       _____
                                       Chief Clerk of the House

    I  certify that H.B. No. 2363 was passed by the Senate on May
25, 1987, by the following vote:  Yeas 30, Nays 0.


                                       _____
                                       Secretary of the Senate


APPROVED:   _____
                     Date


            _____
                  Governor


3

**00250**
Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

H. B. No. 2363

By _Hackney_

### A BILL TO BE ENTITLED

#### AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

MAR 13 1987
1. Filed with the Chief Clerk.

MAR 30 1987
2. Read first time and Referred to Committee on

APR 27 1987
_Energy_

3. Reported ___ favorably (as amended) (as substituted) and sent to Printer at _11:38 am_

APR 28 1987

APR 28 1987
4. Printed and distributed at _8:58 pm_

APR 29 1987
5. Sent to Committee on Calendars at _LIC 9:28 am_

MAY 8 1987
6. Read second time (amended); passed to third reading (failed) by (Non-Record Vote) (Record Vote of ___ yeas, ___ nays, ___ present, not voting).

7. Motion to reconsider and table the vote by which H.B. _____ was ordered engrossed prevailed (failed) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

8. Constitutional Rule requiring bills to be read on three several days suspended (failed to suspend) by a four-fifths vote of _____ yeas, _____ nays, and _____ present, not voting.

MAY 8 1987
9. Read third time (amended); finally passed (failed) by (Non-Record Vote) (Record Vote of _____ yeas _____ nays _____ present, not voting).

10. Caption ordered amended to conform to body of bill.

11. Motion to reconsider and table the vote by which H. B. _____ was finally passed prevailed (failed) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

MAY 8 1987
12. Ordered Engrossed at _1:04 pm_

MAY 8 1987
13. Engrossed.

MAY 8 1987
14. Returned to Chief Clerk at _11:38 pm._

MAY 11 1987
15. Sent to Senate.

_Betty Murray_
Chief Clerk of the House

MAY 11 1987
16. Received from the House

MAY 12 1987
17. Read, referred to Committee on _____

NATURAL RESOURCES

MAY 21 1987
18. Reported favorably

19. Reported adversely, with favorable Committee Substitute; Committee Substitute read first time.

20. Ordered not printed.

21. Regular order of business suspended by

(a viva voce vote.)
(_____ yeas, _____ nays.)

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L.P.

00251

22. To permit consideration, reading and passage, Senate and Constitutional Rules suspended by vote of _____ yeas, _____ nays.

MAY 25 1987

*Laid before the Senate*

23. Read second time _____ passed to third reading by:

(a viva voce vote,)
_____ yeas, _____ nays.

24. Caption ordered amended to conform to body of bill.

MAY 25 1987

25. Senate and Constitutional 3-Day Rules suspended by vote of __29__ yeas, __1__ nays to place bill on third reading and final passage.

MAY 25 1987

26. Read third time and passed by

(a viva voce vote)
( __30__ yeas, __0__ nays.)

*Betty King*

Secretary of the Senate

OTHER ACTION:        OTHER ACTION:

MAY 25 1987    27. Returned to the House.

MAY 25 1987    28. Received from the Senate (with amendments.) (as substituted)

29. House (Concurred) (Refused to Concur) in Senate (Amendments) (Substitute) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, _____ present, not voting).

30. Conference Committee Ordered.

31. Conference Committee Report Adopted (Rejected) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

MAY 25 1987    32. Ordered Enrolled at __1:57 pm__

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L.P.

00252

_____       _____
President of the Senate              Speaker of the House

I certify that H.B. No. _2363_ was passed by the House
                        (1)
on ___May 8___ , 1987, by a non-record vote.
        (2)


                                 _____
                                  Chief Clerk of the House

I certify that H.B. No. _2363_ was passed by the Senate
on ___May 25___ , 1987, by the following vote:
        (3)
Yeas _30_ , Nays _0_ _____ .
     (4)                        (5)


                                 _____
                                  Secretary of the Senate

APPROVED:

         _____
                 Date


         _____
               Governor


**** Preparation:   'A;CT27;

**00253**

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

SECTION 2. This Act takes effect September 1, 1987.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

HB 2171, A bill to be entitled An Act relating to the compensation of the judges of the county civil courts at law in certain counties.

Representative Polumbo offered the following committee amendment to the bill:

COMMITTEE AMENDMENT NO. 1

Amend HB 2171 as follows:
In Section 1, strike all language beginning with the words "In addition to . . . ." on page 1, line 24, through the remainder of Section 1.

Committee Amendment No. 1 was adopted without objection.

HB 2236 was withdrawn by the author.

HB 2278, A bill to be entitled An Act relating to the offense of receiving deposits in certain financial institutions.

HB 2345, A bill to be entitled An Act relating to duties and compensation of the district attorney for the 110th Judicial District.

HB 2363, A bill to be entitled An Act relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

HB 2369, A bill to be entitled An Act relating to the identification of poll watchers.

HB 2371, A bill to be entitled An Act relating to the disposition of a poll list.

HB 2392, A bill to be entitled An Act relating to the development of research facilities at The University of Texas at Austin.

HB 2408, A bill to be entitled An Act relating to the hearing and determination of juror excuses and the postponement of jury service.

HB 2409, A bill to be entitled An Act providing for certificates of title evidencing ownership of a motorboat or an outboard motor to be issued on an accelerated basis for a prescribed fee.

HB 2466, A bill to be entitled An Act relating to the regulation of massage therapists and massage establishments.

HB 2486, A bill to be entitled An Act relating to receivership for local religious congregations.

CSHB 2517, A bill to be entitled An Act relating to the powers and bonding authority of the Johnson County Fresh Water Supply District No. 1, and the validation of certain actions of the district.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
SECTION 1. DEFINITION. In this Act, "district" means the Johnson County Fresh Water Supply District No. 1.

SECTION 2. POWERS. (a) In addition to the powers granted under Chapter 53, Water Code, and subject to approval at an election held as provided by Section

**00254**

Cause No. DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.

are rendered. If such prisoner cannot pay for such services because of indigence, as defined in the Indigent Health Care and Treatment Act (Article 4438f, Vernon's Texas Civil Statutes), said county shall assist the prisoner in applying for reimbursement through that Act or the hospital district of which he is a resident. A prisoner who does not meet the eligibility for assistance payments shall remain obligated to reimburse the county for any medical, dental, or health services provided and that county shall have authority to recover the amount expended in a civil action.

SECTION 2. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed by the House on April 23, 1987, by the following vote: Yeas 138, Nays 0, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 2306 on May 26, 1987, by the following vote: Yeas 129, Nays 0, 1 present, not voting. Passed by the Senate, with amendments, on May 22, 1987, by the following vote: Yeas 30, Nays 0.

Approved June 19, 1987.

Effective June 19, 1987.

---

## CHAPTER 1011

### H.B. No. 2868

#### AN ACT

relating to attorney's fees and damages in a suit for failure to timely pay proceeds derived from the sale of oil or gas production.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Subchapter K, Chapter 91, Natural Resources Code, as added by Chapter 228, Acts of the 68th Legislature, Regular Session, 1983, is amended by adding Section 91.406 to read as follows:

*Sec. 91.406. ATTORNEY'S FEES AND MINIMUM AWARD. If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:*

*(1) reasonable attorney's fees; and*

*(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.*

SECTION 2. This Act applies only to a suit filed on or after the effective date of this Act.

SECTION 3. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed by the House on May 8, 1987, by a non-record vote. Passed by the Senate on May 25, 1987, by the following vote: Yeas 30, Nays 0.

Approved June 19, 1987.

Effective Aug. 31, 1987, 90 days after date of adjournment.

00255

Cause No.DC-12-200; Gloria Garcia vs. Genesis Crude Oil, L. P.